

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00065-CV
_____

CITY OF PARIS AND KEVIN CARRUTH, Appellants

V.

RANGER ABBOTT, Appellee

On Appeal from the 62nd Judicial District Court
Lamar County, Texas
Trial Court No. 79627

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

Ranger Abbott purchased real property within the City of Paris, Texas (City), with the intention of using it as a mobile home park based upon his belief that City Manager, Kevin Carruth, had made a representation that the entire property was approved for nonconforming use, so long as it continued to be used as a mobile home park. Abbott submitted a preliminary plat outlining the locations of new roadways, driveways, trailer pads, and utilities to the City's Planning and Zoning Department (Department), after which the Department informed him that he would have to get the property rezoned from a commercial category to single family dwelling No. 3. Abbott sued the City and Carruth, alleging multiple claims, after which Abbott submitted an application to the City for a building permit, which was denied. The City and Carruth filed a plea to the jurisdiction, which the trial court granted with respect only to Abbott's claims filed under the Texas Tort Claims Act.[1] The trial court denied the City's plea to jurisdiction relating to Abbott's claims for "inverse condemnation, for violations of procedural and substantive due process and equal protection and for breach of contract and declaratory relief, without prejudice to Defendants' right to reurge their Plea as to these claims." Pursuant to Section 51.014(8) of the Texas Civil Practice and Remedies Code, the City and Carruth bring this accelerated, interlocutory appeal from the denial of a plea on these claims.[2] *See* TEX. CIV. PRAC. & REM. CODE ANN.

---

[1] Abbott did not complain about the grant of the plea with respect to the Texas Tort Claims Act "cause of action."

[2] Although the pleadings are unclear as to whether Abbott included Carruth in the suit in his individual capacity, his position that Carruth's actions were such that they bound the City as a contract, one assumes that Abbott alleges that

2

§ 51.014(8) (West 2008). Because the trial court did not have subject-matter jurisdiction, we reverse the trial court's judgment and render judgment dismissing Abbott's claims.

## I.      Factual and Procedural History

The subject of this suit is a 7.77 acre tract of land located in Paris, Texas, now owned by Abbott.   Prior to its annexation by the City, about half of the property was used as a mobile home and travel trailer park and the other part was vacant.   Abbott became interested in purchasing the entire tract with the goal of expanding the mobile home park to encompass the full acreage.   After Abbott notified the City of his plans and had consulted with city officials, Carruth penned a May 8, 2008, letter to Abbott, which included the following:

> According to the zoning records of the City of Paris the above-referenced property is currently zoned Commercial (C); however, it is my understanding that there is a mobile home park on the property which has been continuously operated since originally opening several years ago.   Unless its use as a mobile home park ceases in its entirety it is considered a non-conforming use by the City.
>
> Notwithstanding any current moratoriums which may affect the property and as long as the property continues to be used as a mobile home park, its non-conforming use will be allowed.  Further, this right to non-conforming use will transfer to you if you buy the property, and will be transferable by you to a new owner of the property.
>
> Lastly, your proposed use of the property to construct single or multifamily dwellings from permanent or portable intermodal steel building units will be allowed under the current zoning of the property, assuming the intermodal units comply with applicable building codes.

---

Carruth acted in his official capacity and not personally.  A suit against a government employee in his official capacity is a suit against his government employer, and an employee sued in his official capacity has the same governmental immunity, derivatively, as his government employer.  *Franka v. Velasquez*, 332 S.W.3d 367, 382–83 (Tex. 2011).  Accordingly, references hereafter are made solely to the City and not to the City and Carruth.

3

The letter was signed "Kevin Carruth City Manager." Abbott believes this letter established a contract between him and the City.[3]

In reliance upon this letter, Abbott purchased the property and began planning the expansion of the mobile home park. Abbott sent a preliminary plat to the Department, which detailed the proposed locations of roadways, driveways, trailer pads, and utilities. He made arrangements with utility providers for the installation of electrical, water, and sewer services, and also purchased twenty mobile homes in expectation of the plat approval. In response to the preliminary plat, Abbott received a letter dated May 20, 2010, stating, "The following are areas that need to be corrected before a permit can be issued: 1. Current zoning on the property is Commercial. In order to place additional Manufactured Homes it must be zoned Single Family Dwelling District No. 3. . . ."

On June 21, 2010 and July 1, 2010, Abbott submitted written requests to appear before the City Council, both of which were denied. Almost a month after suit was filed (July 16, 2010), Abbott submitted a building permit application and notice of claim to the City "regarding the damages incurred by Plaintiff due to the City's actions in breach of the City Manager's letter." On August 20, 2010, the permit application was returned to Abbott with the notation that as

---

[3]Abbott's petition states that "the City Council ratified the City's position as articulated in the City Manager's Letter by its action and statements at the City Council Meeting on March 8, 2010. At said meeting, the City Council tabled the consideration of a multi-family housing ordinance that would have affected Plaintiff's mobile home park expansion plans for the Property. City Council member Steve Brown specifically mentioned that doing so would permit Plaintiff to move forward with his expansion."

"discussed in person and by telephone over the last four weeks," the permit application was denied.

Abbott sued the City and Carruth on July 22, 2010, raising claims of breach of contract, regulatory taking without just compensation, violations of due process and the equal protection clause, and the Texas Tort Claims Act. He complained of

> damage with regard to the cost of the mobile homes purchased for the expansion of the mobile home park, their transportation, storage and interest expenses, loss of revenue, the costs of insurance, interest and the relocation of set mobile homes, in addition to the devaluation of the mobile home park.

Abbott sought a temporary injunction

> from 1) requiring Plaintiff to submit to and undertake a re-zoning of the Property from its current "approved, non-conforming use"; 2) preventing Plaintiff from his proposed expansion of mobile home park on the Property except with regard to Plaintiff's compliance with Defendant's applicable building codes; or 3) otherwise taking any action which is contrary to, or inconsistent with, Plaintiff's right to continue to use the Property for a mobile home park or travel trailer park.

He also believed he was entitled to declaratory judgment[4] that

> (1) Plaintiff is not required to obtain re-zoning of the Property as a condition to expanding the mobile home park; (2) that as long as the Property continues to be used as a mobile home park or travel trailer park, its non-conforming use will be allowed; and (3) that the right to maintain a mobile home park at the Property, as a non-conforming use, is transferrable by Plaintiff to a new owner of the property.

The City filed a plea to the jurisdiction urging governmental immunity, which was granted by the trial court with respect to Abbott's Texas Tort Claims Act claim, but denied with respect to

---

[4]The petition also sought attorney's fees under the Uniform Declaratory Judgments Act (TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001–.011 (West 2008), and prejudgment interest.

all other claims. The City indicates to this Court that it believes the denial of its plea to the other elements of the lawsuit was erroneous.

## II. Standard of Review

A plea to the jurisdiction based on governmental immunity challenges a trial court's jurisdiction. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004)). A plea questioning the trial court's jurisdiction is reviewed de novo. *Id.* In some instances, however, a plea to the jurisdiction may require the court to consider evidence pertaining to jurisdictional facts. *Id.*; *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). We focus first on Abbott's petition to determine whether the facts pled affirmatively demonstrate that jurisdiction exists. *Holland*, 221 S.W.3d at 642–43. We construe the pleadings liberally, looking to Abbott's intent. *Id.* at 643.[5] "A plea should not be granted if a fact issue is presented as to the court's jurisdiction, but if the relevant undisputed evidence negates jurisdiction, then the plea to the jurisdiction must be granted." *Id.*

## III. Trial Court Was Without Jurisdiction Over Contract Claims

Abbott's suit stems from the Department's denial of his building permit, an action which he argues established a breach of Carruth's letter. Exhaustion of administrative remedies is a jurisdictional prerequisite. *Lamar Corp. v. City of Longview*, 270 S.W.3d 609, 613 (Tex. App.—Texarkana 2008, no pet.). If an agency has exclusive jurisdiction, a claimant must exhaust

---

[5]If the pleadings are insufficient to establish jurisdiction, but do not affirmatively demonstrate an incurable defect, the plaintiff should be afforded the opportunity to replead. *Holland*, 221 S.W.3d at 643.

all administrative remedies in the agency before filing a claim in the trial court. *In re New Hampsire Ins. Co.*, No. 13-11-00198-CV, 2011 WL 3805721, at \*3 (Tex. App.—Corpus Christi Aug. 29, 2011, pet. denied) (citing *In re Entergy*, 142 S.W.3d 316, 321 (Tex. 2004)). "Until the party has exhausted all administrative remedies, the trial court lacks subject matter jurisdiction and must dismiss any claim within the agency's exclusive jurisdiction." *Entergy*, 142 S.W.3d at 321–22. The exhaustion requirement ensures that the administrative agency has the opportunity to resolve disputed fact issues within its exclusive jurisdiction before a court must address those issues. *New Hampsire Ins. Co.*, 2011 WL 3805721, at \*3 (citing *Essenburg v. Dallas County*, 988 S.W.2d 188, 189 (Tex. 1998) (per curiam)).

The creation of a board of adjustment for purposes of appeal is authorized by the Texas Local Government Code. Section 211.008 states,

> The governing body of a municipality may provide for the appointment of a board of adjustment. In the regulations adopted under this subchapter, the governing body may authorize the board of adjustment, in appropriate cases and subject to appropriate conditions and safeguards, to make special exceptions to the terms of the zoning ordinance that are consistent with the general purpose and intent of the ordinance and in accordance with any applicable rules contained in the ordinance.

TEX. LOC. GOV'T CODE ANN. § 211.008 (West 2008). Section 16-100 of the City of Paris Zoning Ordinance[6] provides for the creation of such a board of adjustment. PARIS, TEX., ZONING ORDINANCE 1710 § 16-100 App. C (1957), *available at* http://library.municode.com/index. aspx?clientID =11784&stateID=43&statename=Texas. A person aggrieved by an action by an

---

[6]Pursuant to TEX. R. EVID. 204, we take judicial notice of the ordinances of the City of Paris, Texas, as the same are published at http://library.municode.com/index.aspx?clientID=11784&stateD=43 &statename=Texas.

administrative official may appeal that action to the board of adjustment. TEX. LOC. GOV'T CODE ANN. § 211.010(a)(1) (West 2008). Section 16-102 states, "Appeals to the Board of Adjustment can be taken by any person aggrieved or by an officer, department or board of the municipality affected by the decision of the administrative officer," and provides further procedural instructions. PARIS, TEX., ZONING ORDINANCE 1710 § 16-102 App. C. In exercising its authority, a board of adjustment

> may reverse or affirm, in whole or in part, or modify [an] administrative official's order, requirement, decision, or determination from which an appeal is taken and make the correct order, requirement, decision, or determination, and for that purpose the board has the same authority as the administrative official.

TEX. LOC. GOV'T CODE ANN. § 211.009(b) (West 2008).

The statutory scheme (adopted by the City) requires Abbott to appeal the Department's decision first with the board of adjustment.[7] As explained in *Horton v. City of Smithville*,

> Section 211.010(a) provides that an aggrieved party "*may* appeal to the board of adjustment a decision made by an administrative official." TEX. LOC. GOV'T CODE ANN. § 211.010(a) (emphasis added). When a statute provides that a party "may" appeal, such language has been interpreted to mean that an aggrieved party may appeal, but if an appeal is taken, it *must* be taken to the administrative entity. *Grimes v. Stringer*, 957 S.W.2d 865, 869 (Tex. App.—Tyler 1997, pet. denied).

No. 03-07-00174-CV, 2008 WL 204160, at *4 (Tex. App.—Austin Jan. 25, 2008, pet. denied) (mem. op.).

Because Abbott did not appeal the denial of the building permit (the action from which his causes of action arise) to the City's board of adjustment, he failed to exhaust administrative

---

[7]This additional step is critical because judicial review of the decision made by a board of adjustment is further limited by Section 211.011 of the Texas Local Government Code. TEX. LOC. GOV'T CODE ANN. § 211.011 (West 2008).

8

remedies, and the trial court did not have subject-matter jurisdiction over the breach of contract claim. *Id.*; *Wynn v. City of Irving*, 770 S.W.2d 10, 11 (Tex. App.—Dallas 1989, no writ) ("It is settled that the administrative remedies provided by Local Government Code section 211.009–.010 . . . must be exhausted before matters regarding nonconforming uses may be brought before the courts.").

Moreover, the City's plea to the jurisdiction was based upon the concept of governmental immunity. Governmental immunity[8] is a common law doctrine. *City of Galveston v. State*, 217 S.W.3d 466, 471 (Tex. 2007). Absent an express waiver of its immunity, the governmental entity is generally immune from suit. *Holland*, 221 S.W.3d at 643; *State v. Shumake*, 199 S.W.3d 279, 283 (Tex. 2006); *see Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001). Governmental immunity is comprised of immunity both from suit and from liability.[9] *Little-Tex*, 39 S.W.3d at 594; *see Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999).

> [I]mmunity from suit bars an action against the state unless the state expressly consents to the suit. The party suing the governmental entity must establish the state's consent, which may be alleged either by reference to a statute or to express legislative permission. Since as early as 1847, the law in Texas has been that absent the state's consent to suit, a trial court lacks subject matter jurisdiction.

*Jones*, 8 S.W.3d at 638 (citations omitted); *see Little-Tex*, 39 S.W.3d at 594; *Miranda*, 133 S.W.3d at 224. Legislative consent to sue the governmental entity must be expressed in "clear and

---

[8]The State's immunity is referred to as sovereign immunity, while that of political subdivisions of the State is referred to as governmental immunity. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). For ease of reference, we will generally use the term "governmental immunity."

[9]The references to "immunity" to which we will be referring are immunity from suit, unless otherwise stated.

9

unambiguous language." *Little-Tex*, 39 S.W.3d at 594 (quoting *Univ. of Tex. Med. Branch v. York*, 871 S.W.2d 175, 177 (Tex. 1994)).

"When the State contracts, it is liable on contracts made for its benefit as if it were a private person. Consequently, when the State contracts with private citizens it waives immunity from liability. But the State does not waive immunity from suit simply by contracting with a private person. Legislative consent to sue is still necessary." *Little-Tex*, 39 S.W.3d at 594 (citations omitted); *see Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006).

Abbott's pleadings contained statements that the City waived immunity through its conduct.[10] A 1997 Texas Supreme Court opinion entitled *Federal Sign v. Texas Southern University* (cited in Abbott's brief), contains a footnote which seemingly encourages the possibility of waiver of immunity by conduct. 951 S.W.2d 401, 408 n.1 (Tex. 1997). There, the court wrote that there could be "circumstances where the State may waive its immunity by conduct other than simply executing a contract so that it is not always immune from suit when it contracts." *Id.* Citing *Federal Sign* and various courts of appeals opinions which followed, the argument of waiver of immunity from suit based on conduct was raised in *Little-Tex*. *Little-Tex*, 39 S.W.3d at 595. *Little-Tex* acknowledged *Federal Sign* and its progeny, but expressly rejected the waiver by conduct doctrine because "the situation ha[d] changed" due to the Legislature's enactment of "a dispute-resolution procedure to resolve certain breach-of-contract cases against the State" as

---

[10]The waiver by conduct argument is generally asserted where the governmental entity accepts some benefit under the contract.

10

codified in Chapter 2260 of the Texas Government Code. *Id.* at 595, 597. That chapter requires alternative dispute resolution as a prerequisite to presenting breach of contract claims in court.

Due to the post-*Federal Sign* legislative action, *Little-Tex* held that "the State does not waive its immunity from a breach-of-contract action by accepting the benefits of a contract," and concluded "that there is but one route to the courthouse for breach-of-contract claims against the State, and that route is through the Legislature." *Id.* at 598; *see Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 857 (Tex. 2002) ("Creating a waiver-by-conduct exception would force the State to expend its resources to litigate the waiver-by-conduct issue before enjoying sovereign immunity's protections—and this would defeat many of the doctrine's underlying policies."). In that case, because Chapter 2260's express language stated that the administrative proceedings are a precursor to legislative consent to sue, *Little-Tex* held that failure to comply with the procedure prohibited pursuit of the breach of contract claim and dismissed the appeal for want of jurisdiction. *Little-Tex*, 39 S.W.3d at 598, 600. However, Chapter 2260 specifically excluded municipalities from the statutorily required alternative dispute mechanism. TEX. GOV'T CODE ANN. § 2260.001(4) (West 2008).

While the State's sovereign immunity was at issue in *Little-Tex*, the City's governmental immunity is at issue here. In order to curb the application of *Little-Tex* from foreclosing suit filed by plaintiffs with claims against local governmental entities (who were not included in Chapter 2260's waiver of immunity), the Legislature treated cities somewhat differently, enacting Section

11

271.151 of the Texas Local Government Code "to loosen the immunity bar." *Kirby Lake Dev.,*
*Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 838 (Tex. 2010). Whereas, under
*Little-Tex*, 39 S.W.3d at 598, "the State does not waive its immunity from a breach-of-contract
action by accepting the benefits of a contract," a local governmental entity authorized by statute or
the State constitution to enter into a contract waives governmental immunity to suit for the purpose
of adjudicating a claim for breach of a contract subject to the provisions of Chapter 271 of the
Texas Local Government Code. TEX. LOC. GOV'T CODE ANN. § 271.152 (West 2005).

> Section 271.152 provides:
>
> A local governmental entity that is authorized by statute or the constitution to enter
> into a contract and that enters into a contract subject to this subchapter waives
> sovereign immunity to suit for the purpose of adjudicating a claim for breach of the
> contract, subject to the terms and conditions of this subchapter.

TEX. LOC. GOV'T CODE ANN. § 271.152. The statute goes further to define a "[c]ontract subject to
this subchapter" as "a written contract stating the essential terms of the agreement for providing
goods or services to the local governmental entity that is properly executed on behalf of the local
governmental entity." TEX. LOC. GOV'T CODE ANN. § 271.151(2). As can be seen, the statute is
specific; it requires (1) a written contract, (2) properly executed, (3) stating the essential terms of
the agreement, (4) for goods or services, (5) entered into by a local governmental entity, (6) who
had authority to contract.

The City asserts that Carruth's letter was not a contract with Paris, there was no consideration for any agreement, and Carruth was not authorized[11] to bind the governmental entity. However, as noted in *Kirby Lake*, "[t]he relevant inquiry is whether the Agreements entail the provision of 'goods or services' to the" local governmental entity. 320 S.W.3d at 839; *see Water Exploration Co. v. Bexar Metro. Water Dist.*, 345 S.W.3d 492, 495 (Tex. App.—San Antonio 2011, no pet. h.) (deciding whether contract was for goods or services to answer threshold question of court's jurisdiction over breach of contract claim).

Although Chapter 271 provides no definition for the term "services," the term is generally "broad enough to encompass a wide array of activities." *Kirby Lake*, 320 S.W.3d at 839. "In ordinary usage the term 'services' has a rather broad and general meaning," and "[i]t includes generally any act performed for the benefit of another under some arrangement or agreement whereby such act was to have been performed." *Id*. However, there must be some obligation to perform. Abbott's pleadings neither suggest that he was obligated to perform any service for the City, nor that he was to provide any goods to the City. Therefore, we find that Carruth's letter was not a contract for goods or services.

---

[11]For a general opinion on authority to contract, see *City of Bonham v. Sw. Sanitation, Inc.*, 871 S.W.2d 765 (Tex. App.—Texarkana 1994, writ denied). *See City of Oakridge N. v. Mendes*, 339 S.W.3d 222 (Tex. App.—Beaumont 2011, no pet.) (reversing trial court's denial of plea to jurisdiction because plaintiff's claims not founded upon properly executed contract); *Housing Auth. of City of Dallas v. Killingsworth*, 331 S.W.3d 806, 812 (Tex. App.—Dallas 2011, pet. denied) (authority to contract must be present for waiver of governmental immunity under Chapter 271).

The Texas Supreme Court has "consistently deferred to the Legislature to waive . . . immunity from suit, because this allows the Legislature to protect its policymaking function." *Tooke*, 197 S.W.3d at 332. *Little-Tex* determined that because immunity is waived by the Legislature, the only route to the courthouse for breach of contract claims was through the legislative procedure described in Chapter 2260, which addressed breach of contract claims. As in *Little-Tex*, the Legislature has spoken by enacting a statute which caused there to be a waiver of governmental immunity only for certain breach of contract claims meeting the requirements of Chapter 271. By omitting a blanket waiver of immunity for all contracts entered into by a governmental entity with authority, the Legislature expressed its intention that it did not wish to waive governmental immunity for contracts which could not be classified as a contract for goods or services. *Water Exploration Co.*, 345 S.W.3d at 501 (in affirming grant of plea to jurisdiction, San Antonio reasoned, "[h]ad the Legislature intended to waive immunity for all contracts entered into by the State, it would have so stated") (citing *E. Houston Estate Apartments*, *LLC v. City of Houston*, 294 S.W.3d 723, 736 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (affirming trial court's grant of plea to jurisdiction on claim of breach of loan agreement, which was not a good or service as contemplated by Legislature's limited waiver of governmental immunity)). Following the logic in *Little-Tex*, Chapter 217 also prevents waiver of governmental immunity through conduct.

14

Because Abbott failed to exhaust administrative remedies, and because the breach of contract claim does not fall within the confines of Chapter 271 (which waives governmental immunity for contracts involving goods and services), we find that the trial court was without subject-matter jurisdiction and that the denial of the plea to the jurisdiction on the contract claim was erroneous.

**IV.    Trial Court Was Without Jurisdiction Over Declaratory Judgment Claims**

The Uniform Declaratory Judgments Act does not enlarge a court's jurisdiction; it is a procedural device for deciding cases already within a court's jurisdiction. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 370–71 (Tex. 2009); *IT-Davy*, 74 S.W.3d at 855. Under the declaratory judgments portion of the pleading, Abbott asks the trial court to declare that the property's nonconforming use will be allowed. The City's zoning ordinance states that a "nonconforming status shall exist" "[w]hen a use or structure which does not conform to the regulations prescribed in the district in which such use or structure is located was in existence at the time of annexation," "and [was] lawfully constructed, located and operating in accordance with the provision of the prior zoning ordinance or which was a nonconforming use thereunder." PARIS, TEX., ZONING ORDINANCE 1710 § 15-100(b), (c) App. C (1957). "Any nonconforming use of land or structures may be continued for definite periods of time subject to such regulations as the Board of Adjustment may require for immediate preservation of the adjoining property prior to the ultimate removal of the nonconforming use." PARIS, TEX., ZONING ORDINANCE 1710

15

§ 15-101 App. C (1957).  The Department's denial of a permit does not establish that the nonconforming use of Abbott's property has been disallowed; even if it had done so, there was no appeal of that stance to the board of adjustment, which has not spoken upon the matter.  The statement by the Department regarding rezoning contemplated the proposed expansion by Abbott of the mobile home park to areas of the property not previously in such a nonconforming use. Abbott could not circumvent the required exhaustion of administrative remedies by pursuing relief under the Uniform Declaratory Judgments Act.   Because there was neither a denial of the use of the property in conformity with its past ("grandfathered") use, nor any exhaustion of the administrative remedies which were available to Abbott, the trial court was without jurisdiction to address this request for declaratory judgment.

Abbott also sought a declaration that he is not required to obtain rezoning of the Property as a condition of expanding the mobile home park and that the right to maintain a mobile home park is transferrable by him to a new owner of the property.   These requests are directly based upon representations made by Carruth in the letter, which was the genesis of Abbott's claim.

The Texas Supreme Court wrote in *IT-Davy*:

> Private parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority.  But such suits are not "suits against the State."   This is because suits to compel state officers to act within their official capacity do not attempt to subject the State to liability.   Therefore, certain declaratory-judgment actions against state officials do not implicate the sovereign-immunity doctrine.

16

In contrast, declaratory-judgment suits against state officials seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities are suits against the State. That is because such suits attempt to control state action by imposing liability on the State. Consequently, such suits cannot be maintained without legislative permission. And, private parties cannot circumvent the State's sovereign immunity from suit by characterizing a suit for money damages, such as a contract dispute, as a declaratory-judgment claim.

74 S.W.3d at 855–56 (citations omitted); *see City of Houston v. Williams*, 216 S.W.3d 827, 828–29 (Tex. 2007) (per curiam); *Tex. So. Univ.*, 212 S.W.3d at 903; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(b) (West 2008).

In this case, Abbott is not alleging that Carruth acted without authority; rather, he claims that the letter was executed within Carruth's authority and that the city council ratified the letter in such a manner that the representations made in the letter bound the City. With respect to these requests for declaration, Abbott is seeking to enforce the letter as a contract. Where a party "seek[s] a declaratory judgment only in an attempt to have the trial court decide its breach-of-contract claim," the "request for declaratory relief does not waive . . . immunity from suit and cannot be maintained without legislative consent." *IT-Davy*, 74 S.W.3d at 860.

The trial court should have granted the plea to the jurisdiction on Abbott's declaratory judgment claims.

## V. Trial Court Was Without Jurisdiction Over Takings Claims

Although immunity bars breach-of-contract claims, the doctrine does not shield the government from an action for compensation under the takings clause. *Little-Tex*, 39 S.W.3d at

17

598. Abbott asserted both federal and state takings claims. Specifically, he argued that the Department's requirement that he undertake rezoning of the property and its refusal to approve the permit application operated as a regulatory taking. The United States Constitution prohibits the taking of private property without just compensation. U.S. CONST. amends. V, XIV. Article I, Section 17, of the Texas Constitution provides that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." TEX. CONST. art. I, § 17. Abbott makes no argument that the City's actions constituted a total taking of his property, but, rather, that the actions unreasonably interfered with his right to use and enjoy the property "to the extent that it has had a severe economic impact which interferes with [his] distinct investment-backed expectations." This type of claim is referred to as a "Penn Central" takings claim and arises when a governmental entity has denied a landowner approval to develop his property. *City of Carrollton v. HEB Parkway S., Ltd.*, 317 S.W.3d 787, 793 (Tex. App.—Fort Worth 2010, no pet.) (citing *Penn Cent. Transp. Co. v. City of N.Y.*, 438 U.S. 104, 124 (1978)).

The "ripeness doctrine" involves the issue of jurisdiction of the subject matter and power to render a particular relief. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998); *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 200 (1985). A controversy is "ripe" for the courts when it has "legally matured." The ripeness doctrine is to prevent the courts, by avoidance of premature adjudication, from entangling

18

themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. *Abbott Labs. v. Gardner*, 387 U.S. 136 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977).

An administrative action must be final before it is judicially reviewable. *Williamson*, 473 U.S. 172. The finality requirement is concerned with whether the initial decision maker has arrived at a definitive position on the issue that inflicts an actual, concrete injury. "There can be no 'taking' by eminent domain until this condition is complied with. The burden of establishing jurisdiction, of proving a justiciable controversy, clearly falls on the moving party." *City of El Paso v. Madero Dev.*, 803 S.W.2d 396, 400 (Tex. App.—El Paso 1991, writ denied). "A 'final decision' usually requires both a rejected development plan and the denial of a variance from the controlling regulations." *Mayhew*, 964 S.W.2d at 929 (citing *Williamson*, 473 U.S. at 187–88). "The same 'final decision' requirement applies to determine the ripeness of as-applied due process and equal protection challenges to a land-use decision." *Id.* at 930.

### A. Federal Takings Claim Is Not Ripe

The Just Compensation Clause applies to the states by operation of the Fourteenth Amendment. *Mayhew*, 964 S.W.2d at 933. However, a "federal [takings] claim is not ripe until state court proceedings have been concluded." *Hallco Tex., Inc. v. McMullen County*, 221 S.W.3d 50, 59 (Tex. 2006); *see City of Houston v. Guthrie*, 332 S.W.3d 578, 592 (Tex.

19

App.—Houston [1st Dist.] 2009, pet. denied) (citing *City of Dallas v. VRC L.L.C.*, 260 S.W.3d 60, 66 (Tex. App.—Dallas 2008, no pet.); *Williamson*, 473 U.S. at 195 (1985) ("[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.")); *City of Dallas v. Chicory Court Simpson Stuart*, *L.P.*, 271 S.W.3d 412, 423–24 (Tex. App.—Dallas 2008, pet. denied). Because state proceedings have not concluded, Abbott's federal takings claims are not ripe.

*B.        State Takings Claim*

The City and Carruth point to a United States Supreme Court case, *MacDonald, Sommer & Frates v. Yolo County*,[12] as guidance in analyzing the State takings claims.   In that case, the Court determined that rejection of a subdivision proposal by a county planning commission could not be viewed as a final decision by a governmental entity, rendering plaintiff's federal takings claim unripe.  *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 342 (1986).   The Court opined that it would decline "to reach the question whether the Constitution requires a monetary remedy to redress some regulatory takings [where] the records . . . [leave the Court] uncertain whether the property at issue had in fact been taken."   *Id.* at 352.   In *MacDonald*, as here, there was "the possibility that some development will be permitted."   *Id.*

Abbott relies on *Mayhew* to support his argument that his claims are ripe for adjudication because the requirement of seeking rezoning or a variance in this case would be futile.   *Mayhew* was the first Texas Supreme Court case applying the ripeness doctrine to land use regulations stemming from the Mayhews' complaints that a refusal to approve a planned development constituted a taking.   964 S.W.2d. at 928.   After reiterating that the concept of ripeness requiring final decisions is usually signified by rejected development plans and variance denials, the court highlighted the exception that "futile variance requests or re-applications are not required," and ruled that the Mayhews' variance request would have been futile, even though they failed to apply

---

[12]In analyzing the ripeness of a challenge to a land use regulation under the Texas constitution, we apply federal jurisprudence.  *HEB Parkway S.*, 317 S.W.3d at 794 (citing *Mayhew*, 964 S.W.2d at 928–29).

for a variance. *Mayhew*, 964 S.W.2d at 929, 931. The ruling, however, was limited to "the circumstances of [that] case," which are dissimilar to ours. *Id.* at 932.

In that case, the Mayhews owned several hundred acres of land which they hoped to develop, but were confronted by a Town of Sunnyvale ordinance prohibiting planned developments with densities in excess of one dwelling unit per acre. *Id.* at 926. The Mayhews met with the Town, who amended the ordinance to allow development in excess of the limit, with council approval. *Id.* After spending half a million dollars for studies and the preparation of evaluative reports, the Mayhews submitted their planned development proposal to the Town. *Id.* If approved, the Mayhews planned to sell the property to a third party for development. *Id.* However, the third party would only develop the property if it could build a minimum of 3,600 housing units. *Id.* Thus, the Mayhews sought approval to build 3,650 to 5,025 units. *Id.* After four months of consideration, the Town's planning and zoning commission recommended denial of the application. *Id.* The Town council next appointed a negotiating committee, which met with the Mayhews and agreed to a compromise development of 3,600 units, the minimum number of units needed for the third party to purchase the property for development purposes. *Id.* At a subsequent meeting of the Town council, the council was informed that approval for less than 3,600 units would be considered an outright denial. Despite the prior compromise with the negotiating committee, the council voted to deny the development. *Id.* A meeting to reconsider

22

the vote was later cancelled by the Town. Instead of applying for a variance, the Mayhews filed suit. *Id*. at 931.

*Mayhew* observed that "[n]ormally, their failure to reapply or seek a variance would be fatal to the ripeness of their claims." *Id.* (citing *MacDonald*, 477 U.S. at 351; *Williamson*, 473 U.S. at 188–91). However, because the "evidence in this case establishe[d] the extent to which the Mayhews worked with the Town in attempting to have their development approved": spending $500,000.00, engaging in negotiations with the Town for over a year, compromising with a negotiating committee after an initial negative response from the Town's planning and zoning committee, suffering a rejection of their amended development plan application, and cancellation of reconsideration of the Town council's vote, the court held that a variance application would have been futile and that the Mayhews' claims were ripe. *Id.* at 931. Importantly, prior to their application denials, the Mayhews had worked to amend the ordinance which worked to restrict their development plan.

In this case, Abbott consulted with Carruth prior to receiving his letter, and after receiving a letter from the Department in response to his preliminary plat advising him to seek rezoning, Abbott addressed the city council during the "Citizens Forum" portion of the meeting. Abbott then filed a permit application. After the permit was denied, no further action was taken by him to alter the situation. A denial of a permit application can be appealed through procedures described in the City's ordinances. Instead of negotiation or use of such procedures, Abbott filed suit to

23

enforce his interpretations of the representations in Carruth's letter. The lack of a final opinion from the city council, failure to apply for rezoning or variance, and lack of attempt at negotiation or compromise after the permit denial distinguish this case from *Mayhew* and lead us to conclude that the futility doctrine cannot be employed here. *See HEB Parkway S.*, 317 S.W.3d at 798 (distinguishing *Mayhew* where there were no attempts to have the complained-of ordinance amended or changed).

Instead, this case is more similar to that in *City of El Paso v. Madero Development*. In that case, a landowner filed a preliminary plat for phase one of his subdivision development plan with the City Plan Commission. 803 S.W.2d at 398. The landowner received final approval subject to various conditions in 1982. In 1985, the landowner was notified by letter that there had been no activity on phase one of the subdivision, that an El Paso city ordinance stated that failure to "submit the recording plat within one year from the date of the City Plan Commission approval of the final plat shall terminate all proceedings unless an extension of a specified amount of time is approved by the City Plan Commission" and that "the subdivision file was officially closed." *Id.* In 1986, the land was rezoned for "Planned Mountain Development," which dictated a more restrictive use than the previous zoning classification. *Id.* Madero Development, the landowner, sued the City of El Paso, alleging that a taking had occurred. The trial court determined a taking as a matter of law, and a jury awarded the landowner $871,200.00. Concluding that the landowner's claim of inverse condemnation by rezoning was not ripe because he failed to apply for

24

a variance to the zoning, the El Paso Court of Appeals reversed the trial court's judgment and dismissed the appeal for want of jurisdiction. *Id.* at 399. In doing so, *Madero Development* also specifically rejected the landowner's urged application of the "futility doctrine" because the zoning board of adjustment had authority to grant variances. *Id.* at 400.

Our resolution of this issue is guided by the function of the City's different bodies, which explains the reason why a final decision usually "requires both a rejected development plan and the denial of a variance from the controlling regulations." *Mayhew*, 964 S.W.2d at 929; *Williamson*, 473 U.S. at 187–88 (holding that plaintiffs' claims were not ripe because while plan was denied, no variance from zoning regulation preventing approval of plan was sought). Under the City's ordinances, the city council is responsible for enacting zoning ordinances. PARIS, TEX., ZONING ORDINANCE 1710 § 1-100 App. C (1957). The planning commission is responsible for more specific regulations governing the subdivision of land. Section 21-100 of the Paris Zoning Ordinance, entitled "Amendments" allows any person having a proprietary interest in any property to petition the planning and zoning commission for a change or amendment to the provisions of the Zoning Ordinance. PARIS, TEX., ZONING ORDINANCE 1710 § 21-100 App. C (1957). Once the petition is made, the city council may amend, supplement, or change by ordinance the established boundaries of the districts or the regulations, provided the matter is submitted to the planning and zoning commission for its recommendation and report. PARIS, TEX., ZONING ORDINANCE 1710 §§ 21-101, 21-102 App. C (1957). After compliance with procedure for public hearing outlined

25

in Sections 21-103–21.105, the city council votes on the proposed amendment. PARIS, TEX., ZONING ORDINANCE 1710 §§ 21-103–21.105 App. C (1957). The decision of the Paris city council may be appealed to a board of adjustment, which may "authorize in specific cases a variance from the terms of a zoning ordinance," under certain circumstances. TEX. LOC. GOV'T CODE ANN. § 211.009(a)(3) (West 2008); PARIS, TEX., ZONING ORDINANCE 1710 § 21-106 App. C (1957).

In a situation similar to this (i.e., one in which a plaintiff did not seek resolution from the separate governmental bodies), the court in *Williamson* reasoned that "in the face of respondent's refusal to follow the procedures for requesting a variance, and its refusal to provide specific information about the variances it would require, respondent hardly can maintain that the Commission's disapproval of the preliminary plat was equivalent to a final decision that no variances would be granted." 473 U.S. at 190. In the absence of an attempt demonstrating a final decision through use of administrative procedures, and the fact that the pleadings negate the assertion of the futility doctrine since no action was taken after the building permit was denied, we conclude that Abbott's state takings claims were not ripe.

## VI. Trial Court Was Without Jurisdiction Over Due Process and Equal Protection Claims

"The same 'final decision' requirement applies to determine the ripeness of as-applied due process and equal protection challenges to a land-use decision." *Mayhew*, 964 S.W.2d at 930. For the reasons stated above, we likewise conclude that Abbott's due process and equal protection

26

claims were not ripe. Moreover, a "trial court must grant a plea to the jurisdiction . . . when the pleadings do not state a cause of action upon which the trial court has jurisdiction." *Harris County v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004).

### A. *Due Process*

If an individual is deprived of a property right, the government must afford an appropriate and meaningful opportunity to be heard consistent with the requirements of procedural due process. *Perry v. Del Rio*, 67 S.W.3d 85, 92 (Tex. 2001); *Mayhew*, 964 S.W.2d at 939. Accordingly, a plaintiff alleging a procedural due process takings claim must establish that he was deprived of notice and an opportunity to be heard with respect to a decision affecting his property rights. *Mayhew*, 964 S.W.2d at 939. Abbott claims that he was "deprived of notice and a meaningful opportunity to be heard with respect to decisions affecting his property rights." Although the City ordinances provided procedures for appeal and opportunity to be heard on the matter, Abbott did not avail himself of these procedures. Therefore, we find that Abbott cannot now assert a procedural due process takings claim.

Abbott also claims that he was denied substantive due process because the denial of the permit was arbitrary and that the denial had no relation to the public health, morals, safety, or welfare. The permit denial, according to the letter, was based in part upon the failure to rezone the property. Abbott does not assert that the zoning laws have no relation to the public health,

27

morals, safety, or welfare. Because the permit denial was based upon the unchallenged zoning laws, Abbott's petition establishes that the denial was not arbitrary.

B.      *Equal Protection*

The Equal Protection Clause directs governmental actors to treat all similarly situated persons alike. *Sanders v. Palunsky*, 36 S.W.3d 222, 224–25 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Where neither a suspect classification nor a fundamental right is involved, the challenged law survives constitutional scrutiny if it is rationally related to a legitimate governmental purpose. *See Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 457–58 (1988). But, if the plaintiff's constitutional claim is facially invalid, the trial court must grant a political subdivision's plea to the jurisdiction asserting governmental immunity. *See City of Dallas v. Jones*, 331 S.W.3d 781, 787 (Tex. App.—Dallas 2010, pet. dism'd). Thus, if the plaintiff fails to plead a viable claim, a governmental defendant remains immune from a suit for alleged equal protection violations. *See Andrade v. NAACP of Austin*, 345 S.W.3d 1, 6 (Tex. 2011). To assert an equal-protection claim, "[i]t is critical . . . that the plaintiff allege he is being treated differently from those whose situation is directly comparable in all material respects." *Jones*, 331 S.W.3d at 787. An equal protection claim may be asserted by a plaintiff as a "class of one" if he alleges that he has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in

28

treatment. *Id.* (citing *Leonard v. Abbott*, 171 S.W.3d 451, 458 (Tex. App.—Austin 2005, pet. denied)).

Abbott's pleadings invoking the equal protection clause assert that the refusal of the City to allow him to develop his property in accord with the representations he maintains were contained in Carruth's letter, "inasmuch as Defendants' conduct was not rationally related to a legitimate state interest and unfairly discriminates against the Plaintiff." The purpose of the equal protection clause is to secure persons against intentional and arbitrary discrimination. *Id.* It is critical that the plaintiff allege he is being treated differently from those whose situation is directly comparable in all material respects. *Id.* Although he claims he was "discriminate[d] against," Abbott has failed to allege facts that he was similarly situated with others and was treated differently.[13]

## VII. Conclusion

The trial court lacked subject-matter jurisdiction over Abbott's claims.

We reverse the trial court's judgment denying the City's pleas to the jurisdiction and render judgment dismissing Abbott's claims.

Bailey C. Moseley
Justice

Date Submitted: October 4, 2011
Date Decided: October 21, 2011

_____

[13]Further, the petition cannot be amended to include this essential allegation with respect to equal protection claims, as no facts demonstrating an equal protection cause of action have been otherwise asserted or argued.