

NUMBER 13-13-00317-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

CITY OF ALAMO, TEXAS AND
ALAMO ECONOMIC DEVELOPMENT
CORPORATION,                                                        Appellants,

v.

HERIBERTO OSUNA,                                                   Appellee.

On appeal from the 139th District Court
of Hidalgo County, Texas.

MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Chief Justice Valdez

Appellants, City of Alamo, Texas (the "City") and Alamo Economic Development

Corporation ("EDC"), challenge the trial court's denial of their plea to the jurisdiction. By

four issues, appellants contend that they are entitled to governmental immunity. We

reverse and render.

## I. BACKGROUND

Appellee, Heriberto Osuna, and his partner entered into a lease-purchase agreement with the EDC. In his original petition, Osuna claimed that: (1) he agreed to purchase a tract of land from EDC and that EDC financed the property for $700,000 at five percent interest and $100,000 due at closing for a total of $800,000; (2) after closing, the City was to deliver a warranty deed of the property to Osuna; (3) the contract stated that a default would occur if Osuna failed to make two or more lease payments; (4) he made all required payments and never missed a due date; and (5) EDC locked Osuna out, and he was not allowed to re-enter the property to recover his personal belongings.[1]

In his original petition, Osuna sued appellants for breach of contract, quantum meruit, civil conspiracy, and unlawful lock-out. Osuna claimed that appellants breached the contract by terminating it without cause and that appellants then unlawfully locked him out of the property without giving him an opportunity to purchase the property. Osuna requested damages in the amount of "up to $45,000 for cleaning, repairing, and restoring the property upon entering into the contract." As to his unlawful lockout claim, Osuna stated that: (1) appellants failed to provide him with adequate notice of the lockout; (2) failed to place a written notice on his front door stating the name and address or telephone number of the individual or company from which the new key could be obtained; (3) the lockout "was not for the bona fide repair, construction, emergency, abandonment, or unpaid rent"; and (4) "[t]he lockout was not in accordance with the terms of the lease."

---

[1] According to Osuna, the City and EDC eventually conveyed the property to a sitting council member with the City. Osuna claims that the council member paid a significantly lower price for the property—approximately half of what Osuna agreed to pay. Appellants dispute these factual assertions and ask that they be stricken from Osuna's brief because they are not supported by the record. As these factual assertions are not relevant to our analysis regarding jurisdiction, we deny appellants' motion to strike as moot.

2

Subsequently, Osuna filed his third amended petition, which is his live pleading. In it he added several defendants including the City's commissioners Eleazar Escobedo, Diana Martinez, Luciano Ozuna Jr., Roel Landa Jr., and Roberto Diaz De Leon.[2] Osuna asserted the same breach of contract claims regarding the City and EDC. He, however, omitted his quantum meruit claim and added a claim of civil conspiracy stating, "Each individual Defendant, with exception of City Defendants, was a member of a combination of two or more persons, including two separate legal entities." Osuna alleged that the "[i]ndividual Defendants agreed to terminate the contract with [him] to accomplish an unlawful purpose or a lawful purpose by unlawful means." Regarding his unlawful lockout claim, Osuna made the same allegations he made in his original petition. Osuna alleged that immunity had been waived because appellants entered into a contract with him.

The City and EDC filed a joint plea to the jurisdiction claiming that each had sovereign immunity from suit, and that Osuna could not show that either had waived its immunity. Specifically, as to Osuna's breach of contract claim, appellants argued "a waiver of immunity for suit exists only in written contracts stating 'the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local government entity.'" *See* TEX. GOV'T CODE ANN. § 271.151(2) (West, Westlaw through 2013 3d C.S.). Appellants argued further that the lease-purchase contract was not entered into for Osuna to provide goods or services to the City or EDC and that there is no statute waiving governmental immunity for breach of a lease-purchase contract suit. Regarding Osuna's unlawful lockout suit, appellants

_____

[2] These individuals did not file a plea to the jurisdiction and are not parties to this appeal.

3

argued that immunity applied because Osuna could not show that they had consented to the suit.

After a hearing, the trial court denied appellants' plea to the jurisdiction. This appeal ensued.

## II.  STANDARD OF REVIEW

We review a plea to the jurisdiction under a de novo standard of review. *Westbrook v. Penley*, 231 S.W.3d 389, 394 (Tex. 2007). A plea to the jurisdiction seeks to dismiss a case for want of jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004).

> A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit. The claims may form the context in which a dilatory plea is raised, but the plea should be decided without delving into the merits of the case. The purpose of a dilatory plea is not to force the plaintiffs to preview their case on the merits but to establish a reason why the merits of the plaintiffs' claims should never be reached. This does not mean that evidence cannot be offered on a dilatory plea; on the contrary, the issues raised by a dilatory plea are often such that they cannot be resolved without hearing evidence. And because a court must not act without determining that it has subject-matter jurisdiction to do so, it should hear evidence as necessary to determine the issue before proceeding with the case. But the proper function of a dilatory plea does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on their case simply to establish jurisdiction. Whether a determination of subject-matter jurisdiction can be made in a preliminary hearing or should await a fuller development of the merits of the case must be left largely to the trial court's sound exercise of discretion.

*Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000) (internal citations omitted).

## III.  IMMUNITY AND WAIVER

Local governmental entities have absolute immunity from suit unless immunity has been expressly waived by the Legislature. *Kirby Lake Dev., Ltd. v. Clear Lake City Water*

4

*Auth.*, 320 S.W.3d 829, 836 (Tex. 2010); *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011). Immunity deprives a trial court of subject matter jurisdiction. *Miranda*, 133 S.W.3d at 224. Sovereign immunity includes two distinct principles, immunity from suit and immunity from liability. *Miranda*, 133 S.W.3d at 224. Although a governmental unit "necessarily waives immunity from liability" when it enters into a contract "binding itself like any other party to the terms of [an] agreement," the governmental unit does not necessarily waive immunity from suit. Thus, although a governmental unit may waive immunity from liability by entering into a contract with a private party, if the Legislature has not waived immunity from suit, no suit can be maintained. *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011). Conversely, "immunity from liability shields the state from money judgments, even when the Legislature has given consent to sue." *Id.* When the legislature provides for a waiver of immunity from suit it must do so with clear and unambiguous language, and any ambiguity must be resolved in favor of retaining immunity. *Tooke v. City of Mexia*, 197 S.W.3d 325, 328–29, 333 (Tex. 2006); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697 (Tex. 2003).

## IV. BREACH OF CONTRACT

By their first issue, appellants argue that they did not waive immunity from suit by entering into the purchase lease agreement with Osuna. Thus, the trial court lacked subject matter jurisdiction. Osuna responds that the term "services" is construed broadly and that the contract required that Osuna "make improvements and lease a warehouse that is located within the property," and that Osuna "would bear the risk of loss or damage to the property." Thus, according to Osuna, appellants have "failed to provide evidence

5

or make a legally sufficient argument that the type of contract entered with [him] is excluded from" the government code's requirement that the contract required that Osuna provide services to appellants.[3]

The Texas Supreme Court has held that when a governmental unit enters into a contract it does not waive immunity from suit unless "the written contract includes the essential terms of an agreement to provide goods or services to the governmental entity." *Kirby Lake Dev., Ltd.*, 320 S.W.3d at 839. Thus, the question before us is whether the purchase-lease contract here required that Osuna provide goods or services to the City and EDC. *See id.*

In *Lubbock County Water Control and Improvement District v. Church & Akin*, the Texas Supreme Court concluded that the Water District had not waived immunity by entering a lease agreement with Church & Akin to manage a marina.[4] __ S.W.3d __, 2014 WL2994645, at *8 (Tex. 2014). Church & Akin argued that its operation of the marina constituted a service to the Water District. *Id.* at *4.

The court held that "Church & Akin provided its marina services not to its landlord [the Water District] but to its landlord's customers" and that "Church & Akin were not contractually obligated to operate the marina for the Water District." *Id.* at *5. Specifically, the court stated that the Water District did not contract with Church & Akin to manage the marina but instead, the Water District merely leased the marina to Church & Akin and

---

[3] Osuna did not argue to the trial court that EDC is not entitled to immunity from suit because it is not a governmental unit. Thus, we need not address appellants' argument that EDC is a governmental unit as the trial court did not deny its plea to the jurisdiction on that basis.

[4] The Texas Supreme Court decided *Church & Akin* after the trial court made its ruling in this cause. *See generally Lubbock County Water Control and Improvement District v. Church & Akin*, __ S.W.3d __, 2014 WL2994645 (Tex. 2014).

6

Church & Akin had not agreed in the lease agreement to operate the marina. *Id.* The court further reasoned that the lease agreement contained "no terms in which the Water District agreed to pay Church & Akin any amount for its services, so there is no amount that is 'due and owed' [from the Water District to Church & Akin] under the contract.'"[5] *Id.* "Instead, Church & Akin agreed to pay the Water District for a leasehold interest in the property." *Id.* The court emphasized that in some instances a party may agree to provide services in exchange for something other than payment; however, "the absence of any agreement by the governmental entity to pay for goods or services may indicate that the claimant did not in fact agree to provide goods or services to the governmental entity." *Id.* The court explained that despite the fact that Church & Akin were providing marina operation services, "the operation of the marina only indirectly benefited" the Water District; thus, Church & Akin had not agreed to provide goods or services to the Water District.[6] *Id.* at *6.

Here, the lease-purchase agreement states that EDC agreed to "lease-purchase" Osuna 3.38 acres of land. The agreement provided that the premises "with all appurtenances, are hereby leased to [Osuna] for a term of 5 months commencing on October 1, 2010, Rent for the premises is payable in monthly installments of:" (1) $10,000 due on October 1, 2010; and (2) $14,619.69 due on December 1, 2010, January 1,

---

[5] The court relied on section 271.153(a)(1)(3) of the government code which limits a "successful claimant's recovery to 'the balance due and owed by the local governmental entity under the contract.'" *See* TEX. GOV'T CODE ANN. § 271.153(a)(1)(3) (West, Westlaw through 2013 3d C.S.).

[6] Church & Akin also argued that they provided services to the Water District by issuing catering tickets because issuance of those tickets would increase traffic to the marina and the rent that Church & Akin were required to pay the Water District. *Lubbock County Water Control and Improvement District v. Church & Akin*, __ S.W.3d __, 2014 WL2994645, at *6 (Tex. 2014). The court held that there was no evidence supporting this claim. *Id.* at *7–8.

7

February 1, and March 1, 2011. Under the agreement, "$10,000 of each monthly rent payment shall be credited toward the purchase price of the property." Osuna agreed that as a tenant he would "use the Property only for commercial purposes," would not assign the lease or sublet any portion of the property without written approval from EDC, and would not alter the property or install improvements or fixtures without the prior written consent of EDC, and that any improvements would become EDC's property. The agreement also gave Osuna the first option to purchase the property after expiration of the lease and provided that Osuna may have been credited $50,000 of rental towards the purchase of the property. If, however, Osuna did not purchase the property, "any and all rental payments received by [EDC would not] be subject to reimbursement in any way or form."

This contract is a lease agreement with an option to purchase real property. The agreement does not, as Osuna argues, provide that he must make improvements and lease a warehouse that is located within the property.[7] In fact, the contract explicitly states that Osuna shall not make any improvements without EDC's prior written approval. Thus, unlike the claimants in Church & Akin, who claimed that operating the marina under a lease agreement constituted providing services, there is nothing in this lease-purchase agreement that could even arguably support a conclusion that Osuna agreed to provide any services to appellants. "In ordinary usage the term 'services' has a rather broad and general meaning," and "[i]t includes generally any act performed for the benefit of another

---

[7] In his response to appellants' plea to the jurisdiction, Osuna stated that he had "promised to employ 30–50 employees and to pay an interest of 5% on the loan. Further, [Osuna] would lease and develop the abandoned warehouse that was located [on] the property. . . . Further, [Osuna] would bear the risk of loss or damage to the facilities. Thus, the contract was not only for a conveyance of real property." However, Osuna did not attach any evidence supporting a finding that he agreed to hire employees or develop the abandoned warehouse.

under some arrangement or agreement whereby such act was to have been performed." *City of Paris v. Abbott*, 360 S.W.3d 567, 576 (Tex. App.—Texarkana 2011, pet. denied) (citing *Kirby Lake*, 320 S.W.3d at 839). "However, there must be some obligation to perform." *Id.* The contract at issue here neither obligated Osuna to perform any service for appellants nor required that he provide any goods to appellants. *See id.*

Moreover, the contract does not require that appellants make any type of payment to Osuna for any services rendered, which the *Church & Akin* court emphasized showed that the contract was not in fact one for services to the governmental entity. *See Church & Akin*, 2014 WL2994645, at *5. Although Osuna stated in his live pleading that he sought to be paid under the terms of the contract, the contract has no requirement that appellants pay Osuna anything. Osuna has not made a claim for damages due to non-payment of services rendered or for non-payment of goods provided. *See Tooke*, 197 S.W.3d at 346 (explaining that immunity had not been waived by the City because although the claimants' contract claim fell within section 271.152, "the claimants had not alleged that the City failed to pay for work actually performed; rather, they sought recovery only for lost profits they would have made had the contract continued—'consequential damages excluded from recovery under [Section 271.153]'"). Thus, the lease-purchase contract does not waive immunity from suit because it does not contain an agreement that Osuna will provide goods or services to appellants. *See Church & Akin*, 2014 WL2994645 at *6; *Abbott*, 360 S.W.3d at 576 (concluding that a lease agreement with a governmental unit does not waive immunity unless the agreement requires that the claimant provide goods or services to the governmental unit); *see also Bexar Metro. Water Dist. v. Educ. & Econ. Dev. Joint Venture*, 220 S.W.3d 25, 32 (Tex. App.—San Antonio 2006, pet. dism'd)

9

(explaining that section 271.152 does not waive immunity from a suit for breach of a contract for the sale of real estate); *Brazos River Auth. v. Brazos Elec. Power Co-op. Inc.*, 10-09-00403-CV, 2010 WL 2523438, at *3 (Tex. App.—Waco June 23, 2010, pet. denied) (mem. op.) ("The FUA is in essence a lease of the Facility-the FUA describes the Facility as the 'Leased Facility.' Brazos Electric's lease of the Facility is not the provision of goods or services to the Authority, and Brazos Electric does not attempt to argue otherwise in this appeal."); *Somerset Indep. School Dist. v. Casias*, No. 04-07-00829-CV, 2008 WL 1805533, at *2 (Tex. App.—San Antonio Apr. 23, 2008, pet. denied) (mem. op.) ("[S]ection 271.152 does not waive SISD's immunity because the earnest money contract at issue relates to the sale of land—not goods or services.").

We conclude that because the lease-purchase agreement does not constitute a "contract stating the essential terms of the agreement for providing goods or services to the local governmental entity," governmental immunity has not been waived pursuant to section 271.152. *See* TEX. LOC. GOV'T CODE ANN. § 271.152. Accordingly, we sustain appellants' first issue.

## V.     QUANTUM MERUIT

By their second issue, appellants contend that the trial court erred in denying their plea to the jurisdiction regarding Osuna's quantum meruit claim. In his second amended petition, Osuna asserted that appellants "accepted services and materials" from him without providing compensation. However, in his live pleading, Osuna did not make a claim for quantum meruit. Moreover, at the plea to the jurisdiction hearing, Osuna's trial counsel stated, "The only thing I do agree with [appellants'] counsel is that of the quantum meruit claim itself. I agree with him that it should not be brought in. I already researched

10

it and I agree with number two." We conclude that Osuna abandoned his quantum meruit claim when he failed to include it in his live pleading. *See FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Houston Sys.*, 255 S.W.3d 619, 634 (Tex. 2008) (concluding that an amended pleading "effected a voluntary dismissal of the University's claim" that was not included in the amended pleading); *Denton County Elec. Co-op., Inc. v. Hackett*, 368 S.W.3d 765, 772 (Tex. App.—Fort Worth 2012, pet. denied) ("[A] party may voluntarily dismiss claims by omitting them from the amended pleading."). Thus, we need not address this issue as it is not dispositive of the appeal.

## VI. CIVIL CONSPIRACY

By their third issue, appellants contend that the trial court should have concluded that they have not waived immunity from Osuna's civil conspiracy claim. Osuna responds that "[t]he individuals that are named are being sued in their individual capacity and not in their official capacity" and that appellants' "claim that the individuals named in this suit have sovereign immunity is without merit because appellants have no standing to challenge this cause of action."[8]

Osuna cited no statute to the trial court, and we find none, providing that governmental immunity from suit based on a claim of civil conspiracy has been waived by appellants. *See Kirby Lake Dev., Ltd.*, 320 S.W.3d at 836 (explaining that unless specifically waived by the legislature, government entities enjoy immunity from suit); *Tex. Parks & Wildlife Dep't*, 354 S.W.3d at 388. Moreover, civil conspiracy is an intentional tort. *Firestone Steel Products Co. v. Barajas*, 927 S.W.2d 608, 617 (Tex. 1996). In addition, the Texas Tort Claims Act (TTCA) specifically states that governmental entities

---

[8] Osuna does not argue that either the City or EDC waived immunity for his civil conspiracy claim.

11

are immune from suits wherein the plaintiff alleges that an intentional tort has been committed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(2) (West, Westlaw through 2013 3d C.S.). Section 101.057(2) states that the TTCA, which waives the government's immunity from suit for certain torts, does not apply to a claim "arising out of assault, battery, false imprisonment, *or any other intentional tort. . . .*" *Id.* (emphasis added). Thus, to the extent that Osuna claimed that appellants are liable for the intentional tort of civil conspiracy, appellants have immunity from suit. We sustain appellants' third issue.[9]

## VII.    UNLAWFUL LOCKOUT

By their fourth issue, appellants contend that immunity has not been waived on Osuna's unlawful lockout claim. Osuna responds that the "Texas Property Code does not grant any immunity to governmental municipalities." He argues that appellants "cannot establish that the legislature wished to grant sovereign immunity to municipalities when they enter into commercial tenancies." However, governmental entities have immunity from suit unless the legislature has waived that immunity. *See Kirby Lake Dev., Ltd.*, 320 S.W.3d at 836; *Tex. Parks & Wildlife Dep't*, 354 S.W.3d at 388. Here, we have not found a statute wherein the legislature has clearly waived appellant's immunity from unlawful lockout suits. Moreover, Osuna did not cite to the trial court any statute waiving appellants' immunity from an unlawful lockout suit. *Church & Akin,* 2014 WL 2994645, at *6 ("The Water District had the burden, in its plea to the jurisdiction, to establish that it is a governmental entity entitled to governmental immunity. Once it satisfied that burden,

---

[9] All of Osuna's claims including civil conspiracy against the individual defendants, Eleazar Escobedo, Diana Martinez, Luciano Ozuna Jr., Roel Landa Jr., and Roberto Diaz De Leon, will continue below in the trial court because they are not parties to this appeal and they did not file a plea to the jurisdiction. Thus, we need not address Osuna's complaint that appellants lack standing to claim that these individuals have immunity from suit.

the burden shifted to Church & Akin to establish, or at least raise a fact issue on, a waiver of immunity.").  We sustain appellants' fourth issue.

## VIII. CONCLUSION

We reverse the trial court's denial of appellants' plea to the jurisdiction and render judgment dismissing Osuna's cause of action against appellants for lack of subject-matter jurisdiction.  *See* TEX. R. APP. P. 43.2(c).

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
20th day of November, 2014.