

# NUMBER 13-11-00198-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN RE NEW HAMPSHIRE INSURANCE COMPANY, CHARTIS CLAIMS, INC., AND STEPHANIE STARK

## On Petition for Writ of Mandamus.

# OPINION

**Before Justices Garza, Vela, and Perkes
Opinion by Justice Perkes[1]**

By petition for writ of mandamus, relators, New Hampshire Insurance Company, Chartis Claims, Inc., and Stephanie Stark,[2] seek to compel the trial court to withdraw its order denying their motion to dismiss. The underlying proceeding is a workers'

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so."); TEX. R. APP. P. 47.4 (distinguishing opinions and memorandum opinions).

[2] New Hampshire Insurance Company was the workers' compensation insurance carrier for Lazaro Torres's employer, Willbros Construction (U.S.), L.L.C., at the time of death. Chartis Claims, Inc. was the claims administrator for New Hampshire Insurance Company which oversaw the administration of the claim for benefits arising from Lazaro Torres's death. Stephanie Stark was the claims adjuster with Chartis who handled the workers' compensation claim. The relators will be referred to collectively herein as "New Hampshire."

compensation bad-faith case in which the real party in interest, Rosalinda Torres ("Torres"), seeks damages from New Hampshire for an alleged delay in providing her with workers' compensation death benefits following the death of her husband, Lazaro Torres. New Hampshire moved to dismiss Torres's claims for lack of subject matter jurisdiction on grounds that she failed to exhaust her administrative remedies because she did not secure a formal determination from the Texas Department of Insurance, Division of Workers' Compensation ("DWC") that her claim was compensable and that death benefits were owed. The trial court denied the motion to dismiss and this original proceeding ensued. We deny the petition for writ of mandamus.

## I. STANDARD OF REVIEW

To be entitled to the extraordinary relief of a writ of mandamus, New Hampshire must show that the trial court abused its discretion and that there is no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to constitute a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *In re Cerberus Capital Mgmt., LP*, 164 S.W.3d 379, 382 (Tex. 2005) (per curiam) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). In determining whether appeal is an adequate remedy, we consider whether the benefits outweigh the detriments of mandamus review. *In re BP Prods. N. Am., Inc.*, 244 S.W.3d 840, 845 (Tex. 2008) (orig. proceeding).

The failure to grant a plea to the jurisdiction for failure to exhaust administrative remedies with the DWC is subject to mandamus review in order to prevent a "disruption

2

of the orderly processes of government." *In re Liberty Mut. Fire Ins. Co.*, 295 S.W.3d 327, 328 (Tex. 2009) (orig. proceeding); *see In re Tex. Mut. Ins. Co.*, 321 S.W.3d 655, 660 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding) (same); *see also In re Entergy*, 142 S.W.3d 316, 321 (Tex. 2004) (orig. proceeding) ("In short, if the PUC has exclusive jurisdiction in this dispute, the judicial appropriation of state agency authority would be a clear disruption of the 'orderly processes of government.'  This disruption, coupled with the hardship imposed on Entergy by a postponed appellate review, warrants an exception to our general proscription against using mandamus to correct incidental trial court rulings.").

## II. BACKGROUND

Lazaro Torres lived in Texas and worked for Willbros Construction (U.S.), L.L.C. ("Willbros").  In January of 2009, Willbros sent Lazaro Torres to work temporarily at a construction site in Nebraska.  He lived in a rented trailer in Crete, Nebraska, with co-workers.  On January 24, 2009, Lazaro Torres and a co-worker died in their trailer as a result of carbon monoxide poisoning.

On May 29, 2009, New Hampshire informed Willbros that it had received a workers' compensation claim concerning Lazaro Torres's death.  On June 12, 2009, Torres filed a claim for death benefits with the DWC.[3]  On August 12, 2009, the DWC sent a formal "Notice to Carrier of Injury" to New Hampshire, requesting that New Hampshire submit the first report of injury to the DWC electronically.  Despite a specific statutory directive requiring New Hampshire to respond to the claim within a set period

---

[3] On July 6, 2009, Willbros filed a petition in the Nebraska Workers' Compensation Court against Torres to determine the liability of the parties under Nebraska's workers' compensation laws.  On July 1, 2010, Willbros dismissed its petition without prejudice.  New Hampshire contends the "result of the dual proceedings was uncertainty about which state had jurisdiction over the workers' compensation claim."

3

of time, New Hampshire did not respond. *See* TEX. LAB. CODE ANN. § 409.021(a) (West 2006).

On March 2, 2010, Torres requested a benefit review conference before the DWC. At a conference held on April 20, 2010, she contended that New Hampshire had waived its right to contest compensability because it had not notified the DWC that it contested compensability. The conference was recessed at New Hampshire's request. The conference was not reconvened. According to New Hampshire, following this benefit review conference, New Hampshire agreed to accept Torres's claim as compensable.

On July 6, 2010, the DWC ordered New Hampshire to pay attorney's fees to Torres's counsel out of her share of the death benefits. On July 12, 2010, New Hampshire sent Torres a "Notification of First Death Benefit Payment" whereby it paid her $57,750, representing weekly payments of $750 from January 25, 2009, through July 17, 2010, less attorney's fees. On July 12, 2010, New Hampshire notified the DWC that it had begun to pay death benefits to Torres.

On August 10, 2010, Torres filed suit against New Hampshire in the 206th District Court of Hidalgo County alleging causes of action for, inter alia, bad faith, conspiracy, and unfair settlement practices. After filing its original answer, New Hampshire filed a "Motion to Dismiss Certain Claims Based on Lack of Subject Matter Jurisdiction or, in the Alternative, Motion to Stay Proceedings." The gravamen of the motion was that the trial court lacked subject matter jurisdiction because the DWC had not made a determination regarding Torres's entitlement to workers' compensation

4

benefits. A hearing was held and the trial court subsequently denied New Hampshire's motion to dismiss. This original proceeding ensued.

New Hampshire presents two issues for our review: (1) the trial court abused its discretion "in denying New Hampshire's motion to dismiss Torres's bad faith suit for lack of subject matter jurisdiction" because the DWC "has made no determination that Torres's death benefit claim is compensable or that benefits are owed," which is a prerequisite for civil court jurisdiction; and (2) the trial court's erroneous denial of the motion to dismiss is correctable by mandamus. As stated previously, an erroneous denial of a motion to dismiss is correctable by mandamus. *See In re Liberty Mut. Fire Ins. Co.*, 295 S.W.3d at 328. Accordingly, we sustain New Hampshire's second issue, and proceed to address the merits of its first issue.

### III. JURISDICTION

A plea to the jurisdiction contests a trial court's subject matter jurisdiction. *Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Cameron County v. Ortega*, 291 S.W.3d 495, 497 (Tex. App.—Corpus Christi 2009, no pet.). The purpose of a plea to the jurisdiction "is not to force the plaintiffs to preview their case on the merits, but to establish a reason why the merits of the plaintiffs' claims should never be reached." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Subject matter jurisdiction is a question of law; therefore, we review the trial court's ruling on a plea to the jurisdiction de novo. *See Miranda*, 133 S.W.3d at 228 (Tex. 2004); *Ortega*, 291 S.W.3d at 497.

In reviewing a plea to jurisdiction, we must look to the allegations in the pleadings, construe them in the plaintiff's favor, and look to the pleader's intent. *See*

5

*County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). We consider the facts alleged in the petition, and to the extent relevant to the jurisdictional issue, any evidence submitted by the parties to the trial court. *Blue*, 34 S.W.3d at 555. The plaintiff bears the burden to allege facts affirmatively demonstrating the trial court's jurisdiction to hear a case. *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002); *State of Tex. Parks & Wildlife Dep't. v. Morris*, 129 S.W.3d 804, 807 (Tex. App.—Corpus Christi 2004, no pet.). If a plaintiff pleads facts that affirmatively demonstrate an absence of jurisdiction and the defect is incurable, then the cause is properly dismissed. *Peek v. Equip. Serv. Co.*, 779 S.W.2d 802, 804–05 (Tex. 1989). However, when the plaintiff fails to plead facts that establish jurisdiction, but the petition does not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should be afforded the opportunity to amend. *Brown*, 80 S.W.3d at 555; *Ramirez*, 74 S.W.3d at 867; *Roskey v. Cont'l Cas. Co.*, 190 S.W.3d 875, 879, 881 (Tex. App.—Dallas 2006, pet. denied) (affirming order of dismissal where plaintiff was given opportunity to amend but failed to do so in a timely manner).

The Texas Workers' Compensation Act vests the DWC with exclusive jurisdiction to determine a claimant's entitlement to medical and income benefits. *See* TEX. LAB. CODE ANN. § 413.031 (West Supp. 2010); *In re Liberty Mut. Fire Ins. Co.*, 295 S.W.3d at 328. If an agency has exclusive jurisdiction, a claimant must exhaust all administrative remedies in the agency before filing a claim in the trial court. *See In re Entergy*, 142 S.W.3d at 321; *In re Tex. Mut. Ins. Co.*, 333 S.W.3d 925, 929 (Tex. App.—Waco 2011, orig. proceeding) (holding that the trial court has jurisdiction to award damages only to the extent that relief is not dependent upon the direct or indirect adjudication of a matter

6

within the DWC's exclusive jurisdiction). "Until the party has exhausted all administrative remedies, the trial court lacks subject matter jurisdiction and must dismiss any claim within the agency's exclusive jurisdiction." *In re Entergy*, 142 S.W.3d at 321–22. The exhaustion requirement ensures that the administrative agency has the opportunity to resolve disputed fact issues within its exclusive jurisdiction before a court must address those issues. *See Essenburg v. Dallas County*, 988 S.W.2d 188, 189 (Tex. 1998) (per curiam); *Stinson v. Ins. Co. of the State of Pa.*, 286 S.W.3d 77, 84 (Tex. App.—Houston [14th Dist.] 2009, pet. denied.); *Haddix v. Am. Zurich Ins. Co.*, 253 S.W.3d 339, 348 (Tex. App.—Eastland 2008, no pet.).

New Hampshire's argument is premised on the Texas Supreme Court's decision in *American Motorists Insurance Company v. Fodge*, 63 S.W.3d 801 (Tex. 1996). In *Fodge*, the supreme court considered "whether a compensation claimant can prosecute a lawsuit against a carrier to recover benefits and damages resulting from a denial of benefits without a prior determination by the Texas Workers' Compensation Commission that benefits are due her." *Id*. at 802. The *Fodge* court held that a claimant cannot recover damages for the carrier's breach of its duty of good faith in connection with payment of medical expenses if the claimant was not entitled to medical treatment. *Id*. at 804. The Texas Supreme Court explained:

> Because only the Commission can determine a claimant's entitlement to compensation benefits, it follows, as we reasoned in *Saenz*, that "allowing courts to award damages for wrongful deprivation of benefits would circumvent the Commission's jurisdiction" and therefore could not be permitted. Thus, just as a court cannot award compensation benefits, except on appeal from a Commission ruling, neither can it award damages for a denial in payment of compensation benefits without a determination by the Commission that such benefits were due. Accordingly, Fodge could not recover damages for American Motorists' breach of its duty of good faith to pay her medical expenses if she was not entitled to medical

7

treatment. The court could not adjudicate her damages claim without determining her entitlement to medical treatment, a matter within the Commission's exclusive jurisdiction. Her claim for damages from denied medical treatment is made no more viable simply by restating it under the other legal theories she asserted—negligence, fraud, and statutory violations. To award damages equal to the cost of denied medical care is tantamount to ordering that the care be paid for and would, as we said in *Saenz*, circumvent the Commission's exclusive authority to decide that issue. The same is true for Fodge's other claims for damages based on a denial of benefits.

*Id.* (citing *Saenz v. Fid. & Guar. Ins. Underwriters*, 925 S.W.2d 607, 612 (Tex. 1996)).

In 2009, the Texas Supreme Court examined *Fodge* and reapplied the principles announced in that case. *See In re Liberty Mut. Fire Ins. Co.*, 295 S.W.3d at 328 (orig. proceeding) (holding that claimant who exhausted administrative remedies as to income benefits was still required to pursue administrative remedies regarding denial of medical care).

Under *Fodge* and its progeny, a trial court may not consider a claim for relief if it is dependent, either directly or indirectly, upon the resolution of a matter within the DWC's exclusive jurisdiction. *Cunningham Lindsey Claims Mgmt., Inc. v. Snyder*, 291 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2009, pet. filed). The application of the exhaustion doctrine has been extensively explored. *See, e.g., In re Liberty Ins. Corp.*, 321 S.W.3d 630, 637 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding) (applying the exhaustion doctrine to disputes regarding compensability, the extent of injury, medical necessity, and delay in reimbursing medical expenses or delay in the preauthorization of medical care); *see also Stinson*, 286 S.W.3d at 84-85; *Bestor v. Service Lloyds Ins. Co.*, 276 S.W.3d 549, 554 (Tex. App.—Waco 2008, no pet.); *Schwartz v. Ins. Co. of the State of Pa.*, 274 S.W.3d 270, 275 (Tex. App.—2008, pet. filed); *Pickett v. Tex. Mut. Ins. Co.*, 239 S.W.3d 826, 836 (Tex. App.—Austin 2007, no

8

pet.); *In re Tex. Mut. Ins. Co.*, 157 S.W.3d 75, 80–81 (Tex. App.—Austin 2004, orig. proceeding); *Malish v. Pac. Employers Ins. Co.*, 106 S.W.3d 744, 746–47 (Tex. App.—Fort Worth 2003, no pet.). Thus, even when the claimant has exhausted his administrative remedies with regard to one claim or issue, dismissal for lack of jurisdiction may still be warranted if the claimant failed to exhaust his administrative remedies with regard to a different claim or issue. *See Snyder*, 291 S.W.3d at 477–78.

In *Pickett*, for instance, although the parties entered into a benefit dispute agreement to determine which of the claimant's disorders were causally related to a compensable injury, the court found that the agreement did not determine "what treatments would be medically necessary and reasonable for those conditions" and the carrier "remained responsible for reviewing [the claimant's] submitted medical bills and preauthorization requests to determine whether a medical treatment related to her compensable injuries or her non-compensable injuries." *Id.* at 831. The court concluded that the agreement "did not resolve any issues concerning [the claimant's] entitlement to medical benefits," and, thus, the claimant was required to exhaust administrative remedies and obtain a favorable determination from the DWC before proceeding to court. *Id.* at 837.

New Hampshire contends the trial court "clearly abused its discretion in denying New Hampshire's motion to dismiss [Torres's] extra-contractual claims seeking damages allegedly resulting from a delay in initiating workers' compensation death benefits." New Hampshire asserts that because Torres failed to obtain a formal determination from the DWC that her claim is "compensable and that benefits are owed," the trial court "has no jurisdiction to entertain bad faith or other extra-contractual

9

claims based on the alleged untimely payments of those benefits." In response, Torres contends: (1) the exhaustion of administrative remedies did not require a contested case hearing "when there no longer was a case to contest"; (2) the futility exception to the exhaustion of administrative remedies applies in this case; and (3) the completion of a form by New Hampshire and approved by the DWC identifying Torres as an eligible beneficiary to receive death benefits is equivalent to an administrative determination under the facts of this case and estops New Hampshire from contending otherwise.

In order to resolve New Hampshire's argument, we must turn to the structure of the administrative process delineated by the workers' compensation act. The Texas Workers' Compensation Act provides a four-tiered system for the disposition of claims by the DWC. *See* TEX. LAB. CODE ANN. §§ 410.021–.308 (West 2006 & Supp. 2010); *In re Tex. Mut. Ins. Co.*, 329 S.W.3d 1, 5–6 (Tex. App.—San Antonio 2009, orig. proceeding); *Stinson*, 286 S.W.3d at 84. In the first tier, the parties participate in a "benefit review conference" conducted by a "benefit review officer." TEX. LAB. CODE ANN. §§ 410.021–.034 (West 2006 & Supp. 2010). The conference, which is a "nonadversarial, informal dispute resolution proceeding," is designed to inform the parties regarding the procedures regarding a claim, discuss the facts and issues pertaining to the claim, and "mediate and resolve disputed issues by agreement of the parties." *Id.* § 410.021(3) (West 2006). "A dispute may be resolved either in whole or in part at a benefit review conference." *Id.* § 410.029(a) (West 2006). If the conference results in the resolution of disputed issues or in a settlement, the benefit review officer reduces the agreement to writing and the parties and the officer sign the agreement. *Id.* § 410.029(b) (West 2006). If the parties fail to resolve all parts of a dispute at the

10

benefit review conference, the benefit review officer similarly prepares a written report that delineates the status of the case. *Id.* § 410.031 (West 2006).

In the second tier, "[i]f issues remain unresolved after a benefit review conference," the parties may agree to arbitrate, and absent such an agreement, the parties may seek relief at a "contested case" hearing. *Id.* §§ 410.104, 410.151–.169 (West 2006). In the third tier, a party may seek review by an administrative appeals panel. *Id.* §§ 410.201–.208 (West 2006). Finally, in the fourth tier, a party that has exhausted its administrative remedies may seek judicial review. *Id.* §§ 410.251–.308 (West 2006).

New Hampshire contends that Torres failed to exhaust her administrative remedies because she failed to complete the first "tier" in the administrative process for the adjudication of disputes. According to New Hampshire, the parties attended two benefit review conferences, but did not complete this process because they did not enter into a written benefit dispute agreement nor did the benefit review officer prepare a written report of the outstanding unresolved issues. Instead, New Hampshire "simply agreed to accept compensability of Torres's claim and began paying her death benefits, which she accepted." According to New Hampshire, "the DWC never made any determination that Torres's death benefit claim is compensable or that New Hampshire owed her workers' compensation benefits."

We reject New Hampshire's argument. The Texas Workers' Compensation Act does not "require a claimant to continue through all four tiers of the disposition process if the parties agree on the claimant's compensation benefits at an earlier stage in the process." *In re Tex. Mut. Ins. Co.*, 329 S.W.3d 1, 5-6 (Tex. App.—San Antonio 2009,

11

orig. proceeding) (quoting *In re Tex. Workers' Comp. Ins. Fund*, 995 S.W.2d 335, 337 (Tex. App.—Houston [1st Dist.] 1999, orig. proceeding [mand. denied]); *see Stinson*, 286 S.W.3d at 91; *see also Kelly v. Am. Interstate Ins. Co.*, No. 14-07-000083-CV, 2008 Tex. App. LEXIS 8987, at *13 (Tex. App.—Houston [14th Dist.] Nov. 25, 2008, pet. filed). As stated by the Texas Supreme Court, if a dispute exists or arises between the parties, then resolution must first be sought from the DWC; however, "the Act does not require a claimant to seek review of issues not in dispute." *Tex. Mut. Ins. Co. v. Ruttiger*, No. 08-0751, 2011 Tex. LEXIS 600, at *17 (Tex. Aug. 26, 2011).[4]

In the instant case, New Hampshire agreed to pay death benefits. In its own words, it "agreed to accept compensability of Torres's claim." The exhaustion of remedies doctrine did not require Torres to needlessly pursue administrative remedies after the parties no longer had any disputed issues. When the DWC, a claimant, and the insurance carrier agree on the claimant's entitlement to compensation benefits, their agreement is binding as a final determination that the benefits are owed, precluding the need for the claimant to seek administrative remedies before she can sue for damages arising from the carrier's unreasonable delay or denial of benefits. *See Tex. Mut. Ins. Co.*, 2011 Tex. LEXIS 600, at *17; *In re Liberty Ins. Corp.*, 321 S.W.3d at 639, n.11; *Schwartz*, 274 S.W.3d at 274.

Moreover, the entitlement to benefits can be shown by agreement between the carrier and the claimant. *See Tex. Mut. Ins. Co.*, 2011 Tex. App. LEXIS 600, at *15; *In re Tex. Mut. Ins. Co.*, 321 S.W.3d at 664. In the instant case, New Hampshire filed an

---

[4] We note that the scope of our review in this original proceeding is limited to the issues currently before the Court. Accordingly, we express no opinion herein regarding the effect, if any, of the Texas Supreme Court's decision in *Tex. Mut. Ins. Co. v. Ruttiger*, No. 08-0751, 2011 Tex. LEXIS 600, at *17 (Tex. Aug. 26, 2011).

"Application for Division Approval of Change in Payment Period and/or Purchase of an Annuity for Death Benefits." Pursuant to this application, New Hampshire sought to purchase an annuity and to change the timing of payments to Torres. The information sheet regarding this transaction, DWC Form-31, states that:

> Upon the request of an eligible beneficiary entitled to death benefits the insurance carrier and eligible beneficiary may agree to change the frequency of death benefits payments from the standard weekly period to a monthly period. The Division must approve the application to change the frequency of death benefits payments.
>
> . . . .
>
> An eligible beneficiary entitled to death benefits and the insurance carrier may enter into a written agreement for the purchase of an annuity to pay death benefits. All applications must be submitted to the Division for approval.

The application was signed by Torres, New Hampshire, and a representative from the DWC. This form authorized New Hampshire to purchase an annuity providing monthly, rather than weekly, death benefit payments to Torres. There is no suggestion in the record that any dispute remained regarding what specific benefits Torres was entitled to recover following the parties' entry into the agreement to purchase an annuity with monthly payments. In fact, New Hampshire states in its petition that after "attending the April 2010 Benefit Conferences, New Hampshire agreed to accept Torres's workers' compensation claim as compensable." Accordingly, we hold that this completed form may be construed as an agreement that death benefits were due to Torres and, accordingly, the trial court had subject matter jurisdiction to hear her case. *See Tex. Mut. Ins. Co.,* 2011 Tex. LEXIS 600, at \*15; *In re Tex. Mut. Ins. Co.*, 321 S.W.3d at 664; *see also In re Tex. Mut. Ins. Co.*, No. 03-10-00404-CV, 2011 Tex. App. LEXIS 6108, at \*13 (Tex. App.—Austin Aug. 3, 2011, orig. proceeding).

13

## IV. CONCLUSION

Based on the foregoing, we conclude that the trial court did not err in refusing to dismiss the underlying case for lack of jurisdiction. Accordingly, we deny the petition for writ of mandamus.

_____
GREGORY T. PERKES
Justice

Delivered and filed the
29th day of August 2011.