**Affirmed and Opinion Filed this May 3, 2013.**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-11-01722-CV**

**GARRY W. THOMAS AND SHERRY THOMAS, Appellants**
**V.**
**AMERICAN HOME ASSURANCE COMPANY, CHARTIS CLAIMS, INC., F/K/A AIG**
**DOMESTIC CLAIMS, INC., THE INSURANCE COMPANY OF THE STATE OF**
**PENNSYLVANIA, AND CHRISTOPHER EDWARD MUTCH, Appellees**

**On Appeal from the County Court at Law No. 3**
**Dallas County, Texas**
**Trial Court Cause No. CC-10-08702-C**

## OPINION
Before Justices Francis, Lang, and Evans
Opinion by Justice Lang

Garry W. Thomas and Sherry Thomas appeal the trial court's order that granted American Home Assurance Company, Chartis Claims, Inc., f/k/a AIG Domestic Claims, Inc., The Insurance Company of the State of Pennsylvania, and Christopher Edward Mutch's motion to dismiss the Thomases' common law and statutory bad faith claims concerning the initial denial of workers' compensation coverage and delay in approval for payment of Garry Thomas's knee replacement surgery for failure to exhaust administrative remedies. The trial court dismissed with prejudice the Thomases' claims for lack of subject matter jurisdiction. The Thomases raise two issues on appeal that argue the trial court erred when it granted the motion to dismiss because: (1) the trial court has subject matter jurisdiction over their claims; and (2) their claims are not barred for failing to exhaust their administrative remedies.

We conclude the trial court did not err when it granted American Home, Chartis Claims, The Insurance Co. of PA, and Mutch's motion to dismiss. The trial court's order is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In June 2002, Garry Thomas reported sustaining an injury to his left knee while working for Vought Aircraft Industries, Inc. At the time of the incident, American Home provided workers' compensation insurance coverage to Vought Aircraft's employees. Chartis Claims conducted an investigation into Garry Thomas's claim on behalf of American Home and determined that he had sustained a compensable injury to his knee.

Garry Thomas sought treatment for his knee injury from Ralph Craig Saunders, M.D. In August 2002, Garry Thomas had arthroscopic surgery on his knee. Garry Thomas continued to see Dr. Saunders on a periodic basis after his knee surgery. Then, on February 4, 2005, Dr. Saunders sent a request for preauthorization to perform a left total knee replacement on Garry Thomas to Health Direct, Inc., which is the medical preauthorization department for Chartis Claims. On February 10, 2005, Health Direct responded, denying the request. That denial stated, in part,

> A peer reviewer has reviewed the proposed medical treatment for [Garry Thomas]. This is to notify you that the clinical findings do not appear to support the medical necessity of [the] treatment indicated. . . . There may be further information that could have a bearing on this review. If additional information is available, please contact the Utilization Review Department. . . . If you disagree with this determination, you, the claimant, or the claimant's representative may have this decision reconsidered per TWCC Rule 133.305. . . . Per TWCC Rule 133.305, once a reconsideration determination has been made, should you wish to appeal further, you should file a Preauthorization Dispute with the TWCC Medical Review Division within 45 days after the date of the reconsideration determination.

Garry Thomas did not request reconsideration of this decision. On March 7, 2005, Dr. Saunders sent a second request to Health Direct for preauthorization to perform a left total knee

–2–

replacement on Garry Thomas. However, on March 10, 2005, Dr. Saunders withdrew his second preauthorization request.

Meanwhile, on March 11, 2005, Chartis Claims sent Garry Thomas a notice of disputed issues and refusal to pay benefits. That notice states, in part,

> Carrier admits claimant suffered an injury to his left knee on 6/6/2002. While carrier accepts a left knee strain and meniscal tear, the carrier denies claimant having a total knee replacement as this procedure is needed for degenerative changes not related to a work-related injury. . . . If you do not agree with the dispute and refusal to pay benefits, please contact [Christopher Mutch.] . . . If we are unable to resolve the issue to your satisfaction, you have the right to file a dispute with the Texas Workers' Compensation Commission and request a Benefit Review Conference.

Garry Thomas's request for a benefit review conference is not in the record on appeal. However, on June 16, 2005, the Texas Workers' Compensation Commission now known as the Texas Department of Insurance, Division of Workers' Compensation,[1] sent Garry Thomas a letter stating that it had received his request for a benefit review conference, but it could not be processed and a conference would not be scheduled due to "insufficient documentary evidence." The letter requested that Garry Thomas provide the Division of Workers' Compensation with medical documentary evidence that supports his need for a total left knee replacement and shows it is directly related to his injury. There is nothing in the record on appeal showing that Garry Thomas provided the requested documents or that he had a benefit review conference.

On November 21, 2005, Dr. Saunders sent a third request to Health Direct for preauthorization to perform a left total knee replacement on Garry Thomas. On November 29, 2005, Health Direct responded, stating that "treatment has been recommended as medically

---

[1] We note that in 2005, the 79th Texas Legislature merged the Texas Workers' Compensation Commission with the Texas Department of Insurance, which then established the Division of Workers' Compensation. *See Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 434 n.1 (Tex. 2012). Although this change occurred during the pendency of these proceedings, we will refer to the current administrative agency throughout this opinion.

necessary," but advising that "[c]ompensability of the injury may be denied or the extent of the injury may be disputed." The letter stated that the preauthorization expired on January 13, 2006.

On August 24, 2006, Dr. Saunders sent a fourth request to Health Direct for preauthorization to perform a left total knee replacement on Garry Thomas. On August 30, 2006, Health Direct again responded that the "treatment has been recommended as medically necessary," but advised that "[c]ompensability of the injury may be denied or the extent of the injury may be disputed." This preauthorization expired on October 14, 2006.

On August 15, 2008, Dr. Saunders sent a fifth request to Health Direct for preauthorization to perform a left total knee replacement on Garry Thomas. Again, on August 19, 2008, Health Direct responded that the "treatment has been recommended as medically necessary." However, this time, it also stated "Compensability/Dispute Issue: Compensable Injury is to the left knee. The IW had pre-existing asymptomatic arthritis to the knee; however, it was aggravated by the loss of his medial meniscus." This preauthorization had an expiration date of October 3, 2008.

On November 11, 2008, Dr. Saunders sent a sixth request to Health Direct for preauthorization. On November 12, 2008, Health Direct again responded that the "treatment has been recommended as medically necessary." Health Direct also noted, "Compensability/Dispute Issue: . . . Carrier has accepted a left knee injury." Garry Thomas had a total left knee replacement on January 5, 2009 and the surgery was paid for by American Home.

On December 10, 2010, Garry Thomas sued American Home, Chartis Claims, The Insurance Co. of PA, and Mutch for fraud, breach of contract, specific performance, violations of the Texas Deceptive Trade Practices Act and the Texas Insurance Code, and breach of the common law duty of good faith and fair dealing. Sherry Thomas brought derivative claims for mental anguish, pain and suffering, loss of consortium, and damage to her financial and credit

–4–

standing and reputation. The Thomases' claims were premised on the delay in approving Garry Thomas's workers' compensation claim. The Thomases' petition did not differentiate whether their claims were related to the denial of preauthorization based on medical necessity, the denial of compensability of the injury, or both. On July 7, 2011, American Home, Chartis Claims, The Insurance Co. of PA, and Mutch filed a motion to dismiss based on lack of subject matter jurisdiction, claiming that Garry Thomas had failed to exhaust his administrative remedies. After a hearing, the trial court granted the motion to dismiss and dismissed the Thomases' claims with prejudice.

## II. SUBJECT MATTER JURISDICTION

In issues one and two, the Thomases argue the trial court erred when it granted the motion to dismiss because the trial court has subject matter jurisdiction over their claims and their claims are not barred for failing to exhaust their administrative remedies. The Thomases claim that their pleadings and evidence were sufficient to establish that no other administrative remedies were available to Garry Thomas under the Texas Workers' Compensation Act prior to the Thomases filing suit. They contend that the agreement by American Home that Garry Thomas's left total knee replacement was medically necessary and compensable, and its authorization and payment of his left total knee replacement resolved any disputed issues. As a result, there were no disputed issues to submit to the Division of Workers' Compensation and no administrative remedies available to Garry Thomas. American Home, Chartis Claims, The Insurance Co. of PA, and Mutch respond that Garry Thomas does not dispute that he failed to fully utilize the comprehensive dispute resolution scheme set forth in the Texas Workers' Compensation Act. Also, they argue that Garry Thomas was required to pursue administrative remedies during the three years and eight months between the initial denial of his claim and when the claim was approved.

### A. Standard of Review

Whether a trial court has subject matter jurisdiction, including the issue of exhaustion of administrative remedies, is a matter of law. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002); *Stinson v. Ins. Co. of the State of Pa.*, 286 S.W.3d 77, 83 (Tex. App.— Houston [14th Dist.] 2009, pet. denied). Accordingly, an appellate court reviews a challenge to the trial court's subject matter jurisdiction de novo. *See Miranda*, 133 S.W.3d at 228; *IT–Davy*, 74 S.W.3d at 855. In performing this review, an appellate court does not look to the merits of the case, but considers only the pleadings and evidence relevant to the jurisdictional inquiry. *See Miranda*, 133 S.W.3d at 227; *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

When a defendant's motion to dismiss challenges the existence of jurisdictional facts, an appellate court must consider the relevant evidence submitted by the parties when necessary to resolve the jurisdictional issue. *See Miranda*, 133 S.W.3d at 227. This standard generally mirrors that of a traditional summary judgment. *See Miranda*, 133 S.W.3d at 228. Under this standard, an appellate court credits the evidence favoring the non-movant and draws all reasonable inferences in the non-movant's favor. *See Stinson*, 286 S.W.2d at 83.

### B. Applicable Law

"[U]nder the exclusive jurisdiction doctrine, the Legislature grants an administrative agency the sole authority to make the initial determination in a dispute." *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002). If an agency has exclusive jurisdiction, courts have no subject matter jurisdiction over the dispute until the party has exhausted all of the administrative remedies within the agency. *See In re Entergy Corp.*, 142 S.W.3d 316, 321–22 (Tex. 2004) (orig. proceeding); *Subaru of Am., Inc.*, 84 S.W.3d at 221. Absent subject matter jurisdiction, the trial court must dismiss any claim within the agency's

exclusive jurisdiction. *See In re Entergy Corp.*, 142 S.W.3d at 322. Whether the agency has exclusive jurisdiction is a matter of statutory interpretation. *In re Entergy Corp.*, 142 S.W.3d at 322.

The Texas Workers' Compensation Act provides that the recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance for a work-related injury.[2] *See* TEX. LAB. CODE ANN. § 408.001(a) (West 2006); *In re Tex. Mut. Ins. Co.*, No. 05-05-00944-CV, 2005 WL 1763562, *2 (Tex. App.—Dallas Jul. 27, 2005, orig. proceeding).[3] The Act vests the power to award compensation benefits solely to the Texas Department of Insurance, Workers' Compensation Division, subject to judicial review. *See Am. Motorists Ins. Co. v. Fodge*, 63 S.W.3d 801, 803 (Tex. 2001). Medical benefits are included within the definition of benefits. *See* TEX. LAB. CODE ANN. § 401.011(5) (West Supp. 2012).

There are two general types of dispute resolution under the Texas Workers' Compensation Act. *Cunningham Lindsey Claims Mgmt., Inc. v. Snyder*, 291 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). One involves disputes relating to compensability and extent of injury, which are addressed by proceedings pursuant to Chapter 410. TEX. LAB. CODE ANN. § 410.002–.308 (West 2006 & Supp. 2012); *Cunningham*, 291 S.W.3d at 477. The other involves disputes relating to medical necessity or preauthorization for particular treatments, which follows the procedures instituted under Chapter 413. TEX. LAB. CODE ANN. § 413.002–.055; *Cunningham*, 291 S.W.3d at 477. The requirement to exhaust administrative remedies applies to each type of dispute. *Cunningham*, 291 S.W.3d at 477. If

---

[2] We note that some of the relevant provisions of the Texas Workers' Compensation Act were amended in 2005 and 2011. Also, some of the relevant provisions of the Texas Administrative Code were amended in 2006 and 2012. However, none of these changes affect our analysis. Accordingly, in order to avoid confusion, we cite to the current provisions of the Texas Workers' Compensation Act and the Texas Administrative Act.

[3] "All opinions and memorandum opinions in civil cases issued after [January 1, 2003] have precedential value." TEX. R. APP. P. 47.2 cmt., 47.7 cmt.; *see also R.J. Suarez Enters., Inc. v. PNYX, L.P.*, 380 S.W.3d 238, 243 n.2 (Tex. App.—Dallas 2012, no pet.).

both types of dispute are present, a claimant may exhaust administrative remedies applicable to one, but fail to exhaust administrative remedies regarding the other. *Cunningham*, 291 S.W.3d at 477. To determine whether a party has exhausted administrative remedies, an appellate court must compare the disputes raised in the trial court with those raised or resolved in the administrative agency. *Cunningham*, 291 S.W.3d at 477.

**1. Law Relating to Exhaustion of Administrative Remedies Regarding Compensability**

Chapter 410 of the Texas Workers' Compensation Act addresses disputes regarding compensability and extent of injury. TEX. LAB. CODE ANN. § 410.002–.308. This chapter establishes a four-step system for the disposition of claims by the Texas Workers' Compensation Act. *Tex. Mutual Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 437 (Tex. 2012); *Stinson*, 286 S.W.2d at 84.

In the first step, the parties participate in a benefit review conference before a hearing officer designed to mediate and resolve disputed issues by agreement of the parties. TEX. LAB. CODE ANN. § 410.021–.034; *Ruttiger*, 381 S.W.3d at 437; *Stinson*, 286 S.W.2d at 84. The parties to a disputed compensation claim are not entitled to a contested case hearing or arbitration on the claim unless a benefit review conference is conducted. TEX. LAB. CODE ANN. § 410.024 (West 2006). In the second step, a party may seek a contested case hearing with the Texas Department of Insurance, Division of Workers' Compensation, to decide any issues not resolved by agreement or through the benefit review conference. TEX. LAB. CODE ANN. § 410.151–.168; *Ruttiger*, 381 S.W.3d at 437; *Stinson*, 286 S.W.2d at 84. In the alternative, if issues remain unresolved after a benefit review conference, the parties, by agreement, may elect to engage in arbitration. TEX. LAB. CODE ANN. § 410.111–.121. In the third step, the party who loses at the contested case hearing may seek review by an administrative appeals panel. TEX. LAB. CODE ANN. § 410.201–.209; *Ruttiger*, 381 S.W.3d at 437; *Stinson*, 286 S.W.2d at 84. In the fourth and

final step, a party may seek judicial review of issues regarding final decisions of disputes adjudicated by the Division of Workers' Compensation. TEX. LAB. CODE ANN. § 410.251–.308; *Ruttiger*, 381 S.W.3d at 437; *Stinson*, 286 S.W.2d at 84. However, a claimant is not required to continue through every step because the provisions of the Texas Workers' Compensation Act contemplate that disputes may be resolved at any level. *Ruttiger*, 381 S.W.3d at 437.

**2. Law Relating to Exhaustion of Administrative Remedies Regarding Medical Necessity**

Chapter 413 of the Texas Workers' Compensation Act requires a claimant or healthcare provider to seek preauthorization from the insurance carrier for certain medical treatments and services. TEX. LAB. CODE ANN. § 413.002–.055; *Stinson*, 286 S.W.2d at 84; *see also* 28 TEX. ADMIN. CODE § 134.600 (Tex. Dep't Ins., Div. Workers' Compensation, preauthorization, concurrent review, and voluntary certification of health care). The Texas Department of Insurance, Division of Workers' Compensation, has jurisdiction over disputes involving preauthorization of medical care and reimbursement of medical expenses. *See Stinson*, 286 S.W.3d at 85. A claimant must exhaust all administrative remedies with the Texas Department of Insurance, Division of Workers' Compensation, before suing an insurer on statutory and tort claims alleging denials, delays, interruptions, and premature terminations of medical treatment. *See Stinson*, 286 S.W.3d at 85.

An insurance carrier must approve or deny a preauthorization request and provide notice of its decision to the claimant or health care provider within three working days of receipt of the request. 28 TEX. ADMIN. CODE § 134.600(i). The insurance carrier must send written notice of its decision to the injured employee or his representative within one working day of the decision. 28 TEX. ADMIN. CODE § 134.600(j). A denial of preauthorization shall include the clinical basis for the denial, a description or the source of the screening criteria that were utilized as guidelines in making the denial, the principal reasons for denial, if applicable, a plain language description

of the complaint and appeal process, and after reconsideration of a denial, notification of the availability of an independent review. 28 TEX. ADMIN. CODE § 134.600(m).

If an insurance carrier denies preauthorization, the claimant or health care provider may request reconsideration within thirty days of receipt of a written denial and must document the reconsideration request. 28 TEX. ADMIN. CODE § 134.600(o)(1). The insurance carrier must respond to a request for reconsideration within thirty days after receiving a request for reconsideration of denied preauthorization or three working days of receipt of a request for reconsideration of denied concurrent review. 28 TEX. ADMIN. CODE § 134.600(o)(2).

If reconsideration is denied, a health care provider or employee may appeal the denial by filing with the Texas Department of Insurance, Division of Workers' Compensation, a request for medical dispute resolution by an independent review organization. TEX. LAB. CODE ANN. §§ 413.031–.032; 28 TEX. ADMIN. CODE § 134.600(o)(4). Medical necessity disputes are categorized as "preauthorization or concurrent medical necessity" or "retrospective medical necessity" disputes. 28 TEX. ADMIN. CODE § 133.305(a)(4) (Tex. Dep't Ins., Div. of Workers' Compensation, dispute of medical bills). A request for independent review of a medical necessity dispute must be filed no later than the forty-fifth calendar day after receipt of the insurance carrier's denial of appeal. 28 TEX. ADMIN. CODE § 133.308(h) (Tex. Dep't Ins., Div. of Workers' Compensation, MDR of Medical Necessity Disputes). However, under the rules in effect from January 2, 2002 until December 31, 2006, "[i]f the carrier has raised a dispute pertaining to liability for the claim, compensability, or extent of injury . . . the request for an [independent review organization] will be held in abeyance until those disputes have been resolved by a final decision of the commission." 26 TEX. REG. 10934, 10968 (2001) (current version at 28 TEX. ADMIN. CODE § 133.308); see also Stinson, 286 S.W.3d at 86. Further, the department may dismiss an independent review of a request for medical necessity dispute

resolution if the requestor informs the department, or the department determines, that the dispute no longer exists. 28 TEX. ADMIN. CODE § 133.308(i)(1).

A party to a medical necessity dispute may appeal the independent review organization's decision by requesting a contested case hearing. 28 TEX. ADMIN. CODE § 133.308(s)(1). A benefit review conference is not a prerequisite to a division contested case hearing in this instance. 28 TEX. ADMIN. CODE § 133.308(s)(1).

A party to a medical necessity dispute who has exhausted all administrative remedies may seek judicial review of the Division of Workers' Compensation's decision. 28 TEX. ADMIN. CODE § 133.308(s)(1)(F). However, the fact that a medical treatment or service is ultimately preauthorized does not constitute any type of determination by the Texas Department of Insurance, Division of Workers' Compensation, that the initial denial of preauthorization was improper. *See In re Tex. Mut. Ins.*, 2005 1763562, at *2.

### C. Application of the Law to the Facts

The Thomases' petition did not state whether their claims were related to the denial of preauthorization based on medical necessity, the denial of compensability of the injury, or both. We construe their claims and argument on appeal to relate to both.

#### 1. The Thomases' Exhaustion of Administrative Remedies Relating to Compensability

First, we review the parties' arguments as to the exhaustion of administrative remedies regarding compensability. During the hearing on the motion to dismiss, counsel for the Thomases conceded that "[t]here was no hearing on the merits before the board" with respect to the compensability issue. Instead, relying on the Texas Supreme Court's opinion in *Ruttiger*, the Thomases argue that once there was a determination that the injury was compensable, there were no issues for the Division of Workers' Compensation to resolve. However, *Ruttiger* is distinguishable from the facts in this case.

–11–

In *Ruttiger*, the parties entered into a benefit dispute agreement at the benefit review conference. *Ruttiger*, 381 S.W.3d at 437. That agreement stated that it resolved the disputed issues and was signed by the parties. *Ruttiger*, 381 S.W.3d at 437. The agreement was approved by the Division of Workers' Compensation. *Ruttiger*, 381 S.W.3d at 437. The Texas Supreme Court held that this was a sufficient resolution of Ruttiger's claim by the Division of Workers' Compensation to constitute exhaustion of his administrative remedies as to the issue of compensability. *Ruttiger*, 381 S.W.3d at 437.

Here, the record shows that in June 2005, the Division of Workers' Compensation sent Garry Thomas a letter stating that it had received his request for a benefit review conference, but it could not be processed and a conference would not be scheduled due to "insufficient documentary evidence." However, the parties do not contend and the record does not show that Garry Thomas submitted the requested information to the Division of Workers' Compensation or that a benefit review conference was subsequently scheduled.

Also, relying on *In re New Hampshire Insurance Company*, the Thomases claim that "the exhaustion of remedies doctrine d[oes] not require a claimant to '[n]eedlessly pursue administrative remedies after the parties no longer ha[ve] any disputed issues.'" *See In re N.H. Ins. Co.*, 360 S.W.3d 597, 604–05 (Tex. App.—Corpus Christi 2001, orig. proceeding). In that case, the carrier failed to respond to the formal notice of injury. *See In re N.H. Ins. Co.*, 360 S.W.3d at 600. The widow of the deceased employee requested a benefit review conference before the Division of Workers' Compensation contending that the carrier had waived its right to contest compensability. *See In re N.H. Ins. Co.*, 360 S.W.3d at 600. The benefit review conference was recessed and never reconvened. *See In re N.H. Ins. Co.*, 360 S.W.3d at 600. However, following the conference, the carrier agreed to accept the widow's claim as compensable. *See In re N.H. Ins. Co.*, 360 S.W.3d at 600. The widow sued the carrier and the

carrier filed a motion to dismiss for lack of subject matter jurisdiction arguing the Division of Workers' Compensation had not made a determination that the widow was entitled to workers' compensation benefits. *See In re N.H. Ins. Co.*, 360 S.W.3d at 600. On appeal, the Corpus Christi Court of Appeals concluded that an "Application for Division Approval of Change in Payment Period and/or Purchase of an Annuity for Death Benefits" signed by the claimant, the carrier, and the Division of Workers' Compensation may be construed as an agreement that death benefits were compensable to the claimant and, as a result, the trial court had subject matter jurisdiction. *In re N.H. Ins. Co.*, 360 S.W.3d at 605. This case is distinguishable because the record on appeal does not show that Garry Thomas obtained any type of agreement signed by him, the carrier, and the Division of Workers' Compensation that may be construed as an agreement as to the compensability of his claim. Nor do the Thomases claim that any such agreement exists.

The record shows that Chartis Claims notified Garry Thomas that it was disputing compensability on March 11, 2005. Although he requested a benefit review conference, it was denied on June 16, 2005, due to "insufficient documentary evidence" and there is nothing in the record showing that Garry Thomas submitted the requested documents or received a benefit review conference. In November 2008, Health Direct notified Garry Thomas that his claim for compensability had been accepted. During that three-year interval, Garry Thomas did not pursue or obtain any determination by the Division of Workers' Compensation that his injury was compensable. Accordingly, we conclude that the trial court did not err when it granted American Home, Chartis Claims, The Insurance Co. of PA, and Mutch's motion to dismiss the Thomases claims as to the failure to exhaust administrative remedies with regard to compensability.

## 2. The Thomases' Exhaustion of Administrative Remedies Relating to Medical Necessity

Next, we review the parties' arguments relating to the exhaustion of administrative remedies regarding medical necessity. The Thomases do not contend and the record does not show that Garry Thomas sought reconsideration, a medical dispute resolution by an independent review organization, or a contested case hearing of Health Direct's February 10, 2005 denial of Dr. Saunders's first request for preauthorization. Also, the record shows that Dr. Saunders withdrew his March 7, 2005, second request for preauthorization. The four subsequent requests for preauthorization on November 21, 2005, August 24, 2006, August 15, 2008, and November 11, 2008, were approved. The fact that Health Direct ultimately approved Dr. Saunders's third, fourth, fifth, and sixth requests for preauthorization does not constitute any type of determination by the Division of Workers' Compensation that Health Direct's denial of Dr. Saunders's first request for preauthorization was improper. *See In re Tex. Mut. Ins.*, 2005 WL 1763562, at \*2.

Relying on *In re Texas Mutual Insurance Company*, the Thomases claim that "[o]nce a carrier grants a preauthorization request and acknowledges a surgery is medically necessary, a claimant would not need to seek further administrative determination on that issue." *See In re Tex. Mut. Ins. Co.*, 360 S.W.3d 588 (Tex. App.—Austin 2011, original proceeding). In that case, Jones sued Texas Mutual asserting various causes of action predicated on Texas Mutual's extent-of-injury dispute, which allegedly delayed his workers' compensation claim. *In re Tex. Mut. Ins.*, 360 S.W.3d at 590–92. Jones's first request for preauthorization for the surgery was approved by Texas Mutual. *In re Tex. Mut. Ins.*, 360 S.W.3d at 591–92. However, Jones did not have the surgery because Texas Mutual raised an extent-of-injury dispute. *In re Tex. Mut. Ins.*, 360 S.W.3d at 592. Jones sought a benefit review conference and, as a result of the conference, the parties entered into a benefit dispute agreement. Then, Jones submitted a second request for preauthorization, which was also approved. The Austin Court of Appeals concluded that Jones exhausted his administrative remedies regarding the compensability issue. *In re Tex. Mut. Ins.*,

360 S.W.3d at 594–95. That court went on to note that because Texas Mutual had approved both the first and second requests for preauthorization, there were no outstanding issues for which Jones was required to seek administrative review. *In re Tex. Mut. Ins.*, 360 S.W.3d at 595. This case is distinguishable from *In re Texas Mutual Insurance* because Garry Thomas's first request for preauthorization was denied. As a result, Garry Thomas could have sought administrative review of the denial of his request for preauthorization.

Further, in their trial pleadings and during the hearing before the trial court, the Thomases argued that pursuant to the administrative rule in effect at the time, they did not need to seek administrative review of the denial of Garry Thomas's first request for preauthorization because the medical necessity issue was abated until the compensability dispute was resolved. 26 TEX. REG. at 10968. Although the Thomases do not explicitly argue this point on appeal, it is clear from the record that it is the foundation for their appellate argument as it relates to the issue of medical necessity. Health Direct denied Garry Thomas's first preauthorization request on February 10, 2005. Chartis Claims did not notify Garry Thomas that it was disputing the compensability of his claim until March 11, 2005. The record on appeal does not show that Garry Thomas pursued any of the administrative remedies available to him for disputing the denial of his first request for preauthorization, including a request for reconsideration and a request for review of the denial of a request for reconsideration by an independent review organization. Further, the former rule relied on by the Thomases pertains to the abatement of a request for review by an independent review organization. *See* 26 TEX. REG. at 10968. A request for medical dispute resolution by an independent review organization occurs after a health care provider denies a request for reconsideration. *See* TEX. ADMIN. CODE §§ 413.031–.032.

Accordingly, we conclude that the trial court did not err when it granted American Home, Chartis Claims, The Insurance Co. of PA, and Mutch's motion to dismiss with regard to the Thomases claims as they relate to the failure to exhaust administrative remedies with regard to medical necessity.

Issues one and two are decided against the Thomases.

### III.  CONCLUSION

The trial court did not err when it granted American Home, Chartis Claims, The Insurance Co. of PA, and Mutch's motion to dismiss.

The trial court's order is affirmed.

111722F.P05

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

GARRY W. THOMAS AND SHERRY
THOMAS, Appellants

No. 05-11-01722-CV     V.

AMERICAN HOME ASSURANCE
COMPANY, CHARTIS CLAIMS, INC.,
F/K/A AIG DOMESTIC CLAIMS, INC.,
THE INSURANCE COMPANY OF THE
STATE OF PENNSYLVANIA, AND
CHRISTOPHER EDWARD MUTCH,
Appellees

On Appeal from the County Court at Law
No. 3, Dallas County, Texas
Trial Court Cause No. CC-10-08702-C.
Opinion delivered by Justice Lang. Justices
Francis and Evans participating.

In accordance with this Court's opinion of this date, the Trial Court's order dismissing appellants GARRY W. THOMAS's and SHERRY THOMAS's claims with prejudice is **AFFIRMED**.

It is **ORDERED** that appellees AMERICAN HOME ASSURANCE COMPANY; CHARTIS CLAIMS, INC., F/K/A AIG DOMESTIC CLAIMS, INC., THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, AND CHRISTOPHER EDWARD MUTCH recover their costs of this appeal from appellants GARRY W. THOMAS and SHERRY THOMAS.

Judgment entered this 3rd day of May, 2013.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE